## LOUISA TINKLE v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Division Two, May 19, 1908.

1. **NEGLIGENCE: Employment, How Shown: Cook.** The authority of the foreman of defendant's bridge gang to engage plaintiff to cook for the members of the gang at $3.50 each per week and to go with them from place to place on defendant's car as they worked at repairing defendant's bridges, and to bind the company by such engagement, may be shown by facts and circumstances, although there is no direct or positive evidence of such authority. And the facts in evidence in this case are held sufficient to establish the foreman's au-

thority to engage plaintiff and to show that defendant knew she was so employed, and rightfully on its car, at the time of her injuries.

2. ——: **Cooking While Train Was in Motion.** It was not error to permit witnesses to testify to the custom of plaintiff to cook on defendant's car, and to the custom of the bridge gang to eat, while the train was in motion, such evidence tending to show that plaintiff was not negligent in standing up and washing the dishes while the train was in motion—the charge being that while she was so engaged, the running train was stopped so suddenly as to throw her down and break her leg.

3. ——: **Speed of Train.** A witness who has had occasion while riding on trains to note their comparative speed and testifies that he is able to tell approximately how fast the train was running, is competent to testify as to the speed of the train, the weight of his testimony being for the consideration of the jury.

4. ——: **Admission: Rejected But Afterwards Admitted.** Where plaintiff's written admission was first rejected because of lack of sufficient identification, but afterwards when it was again offered objection thereto was overruled and it was directed to be read to the jury, there is no merit in the contention that the admission was excluded.

5. ——: **Sudden Stop: Injury to Employee: Demurrer.** Defendant knew that plaintiff was on the cook car, which was carried from place to place in connection with its bridge gang, and that she was employed in cooking for the men. The car in which she was, was at the rear end of the train which consisted of twenty-five or thirty cars, and no brakeman was on it. The train started smoothly, but soon attained a speed of from eight to twelve miles an hour, and after it had run about a quarter of a mile, and while plaintiff and her husband, as their custom was, were washing the dishes, standing up, the train suddenly stopped, without notice to her, and causing such a violent jar and jerk as to throw her down with great force to the floor of the car, breaking a thigh bone and crippling her for life; it also threw her husband down in the same way; jerked her son's hand-hold loose from the door of the bunk car, swung him around against the side of the car, and almost threw him down; and it caused a heavy cast-iron cooking range, which had been fastened by cleats to the floor, to rear up out of its socket. *Held*, that plaintiff cannot be held guilty of such contributory negligence as bars her recovery, and the case was properly submitted to the jury, notwithstanding witnesses for the defendant testified that the stop was made in the usual way and was not more sudden than usual.

6. ———: ———: ———: **Assumption of Risk.** There was nothing in said circumstances which authorizes a holding that plaintiff assumed the risk. The doctrine does not apply where the injury was occasioned by the negligence of defendant.

7. ———: **Employee or Licensee: Duty of Defendant.** Plaintiff was employed by the foreman of defendant's bridge gang to cook for the men at $3.50 per week for each, and was put to work on the cook car, fitted up and prepared for her by defendant, and there worked for over twelve months, going with and on the car as it was moved from place to place. Her duties required her to be on her feet, moving around in the car, whether it was standing or in motion, and while standing up washing dishes, as the train was moving from eight to twelve miles an hour, the car was stopped so suddenly that she was thrown down and badly injured. *Held,* that she was rendering services for the benefit of defendant, and whether she was a servant or a licensee, defendant owed her a degree of ordinary care commensurate with her situation and the duties of her employment, and the same duty it owed an employee not engaged in the operation of the train but riding therein on the business of the company.

8. ———: **Instruction: Not Bottomed on Petition.** Where the petition alleges a specific act of negligence, namely, that "said defendant, its agents, servants and employees in charge of said engine, improperly, negligently and carelessly caused said engine to suddenly stop with a sudden and violent jerk and shock, thereby throwing plaintiff to the floor with great force," etc., an instruction which authorizes a recovery if plaintiff was injured by defendant's negligence "in the running or switching of one of its trains to which the car of plaintiff was attached," ignores the issue tendered by the petition, and is erroneous, since if the action was predicated simply upon the negligence in the running and switching of the train plaintiff would not be entitled to recover.

9. ———: ———: **No Contributory Negligence.** Where contributory negligence was pleaded and there is some evidence tending to prove that defense, plaintiff's instruction should not ignore that issue.

10. ———: ———: **Issue Invited by Defendant: Burden of Contributory Negligence.** Defendant cannot complain of an instruction which its defense invited. Where it pleaded contributory negligence and introduced evidence to sustain that plea, it cannot be heard to complain of an instruction for plaintiff which declares the burden of proving contributory negligence to be on defendant, which it contends should not have been given because the negligence of plaintiff appeared from her own evidence.

Tinkle v. Railroad.

11. ——— : ——— : **Medical Services.** The plaintiff's right to re-
cover for medical services should be limited by her instruc-
tions to the amount claimed in the petition.

12. ——— : ——— : ——— : **By Married Woman.** If the plaintiff,
a married woman, was compelled to pay out money for medi-
cines and professional services of physicians and nurses, she
is entitled to recover the same.

Appeal from Henry Circuit Court.—*Hon. C. A. Denton,*
Judge.

REVERSED AND REMANDED.

*L. F. Parker, W. F. Evans, John H. Lucas* and
*C. A. Calvird* for appellant.

(1)  The court erred in admitting evidence, viz.,
Louisa Tinkle:  (a)  Hearsay, conversation with one
of Hess's men.  (b)  Conversation with Hess, it not
being shown that Hess had authority to bind defend-
ant.  (c)  Company had paid on two occasions board
bills, it not being shown that the company had any
knowledge of any alleged agreement between Hess and
plaintiff.  (d)  Arrangement for cars, it not being shown
that company knew anything of the plaintiff's connec-
tion therewith.  (e)  That no notice was given her
that car was going to be moved.  Cosgrove v. Railroad,
54 Mo. 498; Williams v. Edwards, 94 Mo. 447; Helm
v. Railroad, 98 Mo. App. 419; Seabold v. Bohn, 169
Mo. 537; Wilson v. Rutherford, 69 Mo. App. 304.  (2)
The court erred in overruling the demurrer offered
by the defendant and refusing to give the peremptory
charge at the conclusion of the whole case.  There was
no evidence of negligence in operation of the cars in
switchyards, either in starting, running or stopping the
same.  Hedrick v. Railroad, 195 Mo. 116; Beebe v.
Railroad, 103 S. W. 1023; Wait v. Railroad, 165 Mo.
612; Erwin v. Railroad, 94 Mo. App. 297; Portuchek
v. Railroad, 101 Mo. App. 55; Guffey v. Railroad, 43

Mo. App. 466. *Res ipsa loquitur* does not apply. Smith v. Railroad, 113 Mo. 70; Hamilton v. Railroad, 100 S. W. 671; Hagnie v. Railroad, 103 S. W. 581; Copeland v. Railroad, 175 Mo. 650. Contributory negligence: Engleking v. Railroad, 187 Mo. 164; Schmidt v. Railroad, 191 Mo. 215; Shield v. Railroad, 100 Mo. App. 517; Debalt v. Railroad, 123 Mo. 505; Tanner v. Railroad, 161 Mo. 497; Chaney v. Railroad, 176 Mo. 598. Risk assumed by plaintiff: Shields v. Railroad, 100 Mo. App. 517; Rutledge v. Railroad, 110 Mo. 320; Wait v. Railroad, 165 Mo. 612; Steffen v. Mayer, 96 Mo. 420; Williams v. Railroad, 119 Mo. 316. (3) The court erred in giving instruction 1 asked by plaintiff. This instruction ignores the issues tendered by the pleadings and authorizes a recovery if the jury should believe that defendant was negligent in running or switching one of its trains; ignores the question of authority of Hess, and makes defendant the insurer of the safety of the plaintiff. Thomas v. Babb, 45 Mo. 384; Lumber Co. v. Tie Co., 87 Mo. App. 167; Turney v. Baker, 103 Mo. App. 390; Bank v. Murdock, 62 Mo. 70; Mansur v. Botts, 80 Mo. 651; Yarnell v. Railroad, 113 Mo. 570; Crews v. Lackland, 67 Mo. 619; Greer v. Parker, 85 Mo. 107; Chappell v. Allen, 38 Mo. 213; Fitzgerald v. Hayward, 50 Mo. 516; McKeon v. Railroad, 43 Mo. 405; Deschner v. Railroad, 200 Mo. 333; Harper v. Terminal Co., 187 Mo. 588; Clark v. Kitchen, 52 Mo. 316; Chitty v. Railroad, 148 Mo. 75. (4) Contributory negligence: The burden is on the defendant, but the instruction is misleading in the fact that the contributory negligence herein stands admitted by plaintiff, and should have been declared as a matter of law. Warder v. Seitz, 157 Mo. 151; Moore v. Railroad, 126 Mo. 265; Eckard v. Railroad, 190 Mo. 611. (5) The husband was liable for medical bills, and for that reason instruction 9 was erroneous. Smoot v.

Kansas City, 194 Mo. 524; Kroner v. Railroad, 107 Mo. App. 46; Wallis v. Westhoit, 82 Mo. App. 522; Newell v. Railroad, 108 Mo. App. 530; Perrigo v. St. Louis, 185 Mo. 285.

*Johnson & Sea, John W. Ross, Peyton A. Parks* and *W. E. Owen* for respondent.

(1) A non-expert witness may testify as to the speed of a train. He should qualify to make his opinion of probative force, and his qualification depends on his experience and training, his location and the observation he has made of running trains and other things that make his opinion of value—its weight being for the jury. Stotler v. Railroad, 200 Mo. 123; Walsh v. Railroad, 102 Mo. 586; Aston v. Railroad, 105 Mo. App. 231; Railroad v. Von Steinberg, 17 Mich. 99; Lawson on Expert and Opinion Evidence (2 Ed.), 505. (2) Evidence as to the usual course of conduct (plaintiff standing and cooking and cleaning up) for a considerable length of time without accident or injury is admissible in evidence to show that such course of conduct was not negligent. 5 Am. and Eng. Ency. Law, 639. (3) There was ample evidence of negligence on the part of defendant to go to the jury. It was for the jury and not for the court to pass on the credibility of witnesses, to reconcile the conflict in the testimony and determine the weight to be given to the evidence of the respective witnesses. There was strong and substantial evidence of the mismanagement of the train over which defendant had immediate and exclusive control, and with the running of which plaintiff had nothing whatever to do. Coudy v. Railroad, 85 Mo. 85; Clark v. Railroad, 127 Mo. 210; Blanton v. Dold, 109 Mo. 64; Dixon v. Railroad, 109 Mo. 413; Turner v. Haar, 114 Mo. 335; Burger v. Railroad, 112 Mo. 238; Harris v. Railroad, 89 Mo. 233; Ward v. Steffen, 88 Mo. App. 571; Linn v. Bridge Co., 78 Mo. App. 111; Whitehead

v. Railroad, 99 Mo. 263; Sackewitz v. American Biscuit Co., 78 Mo. App. 144; Hupsley v. Railroad, 88 Mo. App. 348. (4) The proof of the sudden stop of the train, the injury to plaintiff, the attendant circumstances and the unusual physical facts raise a presumption of negligence on the part of defendant, without proof of the exact way in which the train was mismanaged. The doctrine of *res ipsa loquitur* applies between master and servant, where the servant is not at fault and in no manner was connected with the operation of the train. St. Clair v. Railroad, 122 Mo. App. 528; Haas v. Railroad, 11 Mo. App. 706; Blanton v. Dold, 109 Mo. 64; Lee v. Railroad, 112 Mo. App. 372; Miller v. Ocean Steamship Co., 118 N. Y. 199; Pasey v. Schooville, 10 Fed. 140; Sackewitz v. Am. Bis. Mfg. Co., 78 Mo. App. 144; Dougherty v. Railroad, 9 Mo. App. 484. It is not the injury, but the manner and circumstances of the injury, that justify the application of the maxim *res ipsa loquitur* and the inference of the negligence, nor does the application of the principle depend on the relation of the parties, except directly so far as that relation defines the measure of duty imposed on the defendant. Griffin v. Maurice, 166 N. Y. 188; Shearman's Redfield, Law of Negligence (5 Ed.), sec. 59. The term *res ipsa loquitur* is used in the law of negligence with reference to cases where an accident has occurred, and the physical facts surrounding it are such as to create reasonable probability that the accident was the result of negligence of defendant. Houston v. Brush, 66 Vt. 331; Bahi v. Lombard, 53 N. J. Law 233; Excelsior Electric Co. v. St., 57 N. J. Law 224. The most apt and concise statement of the principle of *res ipsa loquitur* is found in the leading case of Scott v. London and St. Katherine Docks Co., 3 Hurl. & C. 596. (5) A servant assumes those risks alone which remain after the master has exercised ordinary care. It is the duty of

the master to exercise reasonable care, commensurate with the nature of the business, to protect a servant from the hazards incident to it. Charlton v. Railroad, 200 Mo. 443; Curtis v. McNair, 173 Mo. 270; Williams v. Railroad, 119 Mo. 316; Rodney v. Railroad, 127 Mo. 676; Herdler v. Buck's S. & R. Co., 136 Mo. 3. (6) Plaintiff being accustomed to the movement of freight trains, and the jerking, jamming and jarring incident thereto, and being expected and required to cook and prepare meals and have them ready on time, whether cars were running or standing, and having done so for more than one year without accident or injury, was not guilty of contributory negligence in standing while the train was moving; and the question of her negligence, under the facts and circumstances revealed in evidence, was properly submitted to the jury, and their verdict is conclusive on that question. If any inference other than contributory negligence may be fairly drawn from all the evidence, then that question becomes one of fact for the jury. 5 Am. and Eng. Ency. Law, 639; Weller v. Railroad, 120 Mo. 648; Nugent v. Railroad, 80 Mo. 62; Harris v. Railroad, 89 Mo. 233; Palmer v. Tel. Co., 91 Mo. App. 114; Fox v. Packing Co., 96 Mo. App. 181. Recklessness or heedlessness should be very apparent to justify a declaration by the court, as a matter of law, that certain conduct on the part of plaintiff amounted to contributory negligence. Deschner v. Railroad, 200 Mo. 311; Reading v. Railroad, 33 Mo. App. 536. (7) By reason of the contract on the plaintiff's part to cook for the bridge gang and be transported from point to point, and the agreement of defendant to furnish cars and fuel for cooking, eating and sleeping and to transport provisions free of charge, all done for defendant's benefit, may not plaintiff's position on the train be compared to that of a postal clerk, and consequently a passenger on the freight train when injured, and entitled to protection

as such passenger? Maguffin v. Railroad, 102 Mo. 540; Melon v. Railroad, 105 Mo. 455; Jones v. Railroad, 125 Mo. 666; Carroll v. Railroad, 88 Mo. 248. If not a passenger, then plaintiff was either a direct employee of the company, or a necessary employee of defendant's employee, riding on the train and doing work for the benefit of defendant with its expressed sanction and approval and under its protection, both as to compensation for her labor and personal safety. In either case, the defendant owed her the same duty it would any employee not engaged in running the train, but riding thereon on the business of the company. And that measure of its duty to plaintiff was to exercise reasonable care, commensurate with (the nature of plaintiff's duties and occupation and) defendant's business, so as to protect her from the hazards incident to running its freight trains. Roddy v. Railroad, 104 Mo. 247; Whitehead v. Railroad, 99 Mo. 263; Lyon v. O'Brien Boiler Works, 68 Mo. App. 148; Brown v. Sullivan, 10 S. W. 288; Ridings v. Railroad, 33 Mo. App. 534; Eason v. Railroad, 65 Tex. 577; Railroad v. Bolton, 430 Ohio St. 224; 2 Thompson, Neg., 1045.

BURGESS, J.—This is an action for damages for personal injuries caused, as alleged, by the negligence and carelessness of the defendant. The case was tried in the circuit court of Henry county on change of venue from Polk county, the trial resulting in a verdict and judgment for plaintiff in the sum of five thousand dollars, from which judgment defendant appeals.

The plaintiff, according to the evidence, was employed by one E. H. Hess, foreman of defendant's "bridge gang," to board and cook for the members of said bridge gang, plaintiff to furnish the board and do the cooking for the compensation of fifty cents a day, or $3.50 per week, for each man, it being further agreed between plaintiff and Hess that in case any of

the men failed to pay her for said board, Hess would deduct the money from their wages and send in board bills to the defendant company and she would receive checks from the company for the amount of the board bills. The evidence showed that plaintiff, in two instances, received checks from the company in payment of arrears for board. The defendant furnished for the use of plaintiff a car in which to do the cooking and for the serving of meals to the bridge gang, also a bunk or sleeping car for the use of plaintiff and her husband and the members of the bridge gang. Defendant also furnished coal and fuel for cooking purposes, and transported the necessary provisions from point to point, free of charge. These arrangements were made by and through Hess, the bridge foreman, with the knowledge and approval of G. W. Turner, defendant's superintendent of bridges and construction. Plaintiff was required to prepare three meals a day for the men, at 6:30 in the morning, at noon, and at 6:30 in the evening, and she was expected, and her unvarying practice during the period of one whole year was, to prepare and make ready the meals and clean up, whether the cars were moving or standing still. She had been employed as cook for a full year, and had traveled to various points in Missouri, Arkansas, the Indian Territory, and Texas, and had by reason of her long experience in riding on freight trains, become accustomed to the usual and ordinary jarring and jamming incident to the moving and stopping of such trains, and became skilled in the art of balancing and protecting herself from injury while in the performance of her work and duties.

On the night preceding the morning of the accident, which resulted in plaintiff's injuries, the freight train to which the six cars used by the bridge gang were attached ran into the terminal yards of defendant at Monett, Barry county, Missouri, the bridge gang

being on the way to Rody, Arkansas, to do some repair work. The plaintiff was not feeling well, and had her husband and son prepare breakfast for the men at 6:30 o'clock the morning of the accident, and she came into the cook and dining car, at the close of the meal. She ate breakfast, and then she and her husband began washing the dishes. While they were so engaged, the train of cars moved out at a speed of eight to twelve miles per hour. The train started smoothly and ran for about a quarter of a mile, when it came to a sudden and violent stop, which produced a violent jar and jam, by reason of which the plaintiff was thrown with great force to the floor of the car, and her right thigh bone was broken near the hip joint, rendering her a cripple for life. Her husband was also thrown to the floor, and a number of dishes were precipitated on the floor and broken. The sudden jar also caused a heavy cast iron range on the car, and which had been fastened down to the floor with heavy wooden cleats, to rear up out of its socket. Plaintiff's son, Ira Tinkle, had hold of the door of the bunk car at the time, and was shaken up, but succeeded in remaining on his feet.

The evidence on the part of the plaintiff differs from that for the defendant as to the rate at which the cars were running and the suddenness of the stop, and particularly as to the latter. Both plaintiff and her son, Ira, testified that in a whole year's experience of riding on freight trains they had never felt or experienced so sudden and violent a shock or jar as the one which threw plaintiff on the floor of the car and caused the injury.

J. F. Watson, engineer on the train, testifying for the defendant, stated that there were between twenty-five and thirty cars in the train; that it was running between six and eight miles an hour, and that he stopped the train in the usual way by means of the air brake and locomotive drivers and tenders; that he did

not stop it suddenly, but that as the train was a long one, and there is always more or less "slack" on a train, a person in the last car, in which car plaintiff was, would be likely to receive a shock and be thrown down, if such person was not on his guard.

The fireman on the engine, the switchyard foreman and two switchmen testified for the defendant, their testimony being to the effect that the stop was not more sudden than usual, and that it was made in the usual way.

E. H. Hess, foreman of the bridge gang, testifying for the defendant, stated that he was in a car ahead of the cook car at the time the train was stopped, that he was writing at the time, and that he did not notice that the bump was more violent than usual. He also stated that plaintiff told him, after she was hurt, that she had been washing dishes, and was in a hurry putting them away at the time she was thrown down. He further testified that he had told plaintiff several times that she should sit down while the train was switching as there would be more or less jarring.

Plaintiff testified, in rebuttal, denying that Hess had ever told her to sit down whenever the train was switching.

Two physicians and surgeons, who had examined plaintiff, testified that she suffered great pain from the injury, that the injury was permanent, and that the injured leg was about an inch and a half shorter than the other and would remain so.

Defendant insists that the court committed error in permitting plaintiff, as a witness in her own behalf, to testify, over defendant's objection, (1) to a conversation had with Hess, the foreman, with reference to her employment as cook, it not being shown, as contended, that Hess had had authority to bind the defendant; (2) that the company had on two occasions paid board bills owing her by the men, it not being

shown that the company had knowledge of any alleged agreement between Hess and plaintiff; (3) as to an arrangement for cars, it not being shown that the company knew of plaintiff's connection therewith; (4) that no notice was given plaintiff that the cook car was about to be moved.

Whether error was committed in admitting evidence of a conversation between plaintiff and Hess detailing the agreement and understanding under which plaintiff went to work as cook for defendant's bridge gang depends upon whether Hess, in making such agreement, had authority so to do, and that the company was bound thereby. That there was no direct or positive evidence of such authority is quite clear, but the existence of such authority may be proven by facts and circumstances, if sufficient. The testimony of the plaintiff, Ira Tinkle, her son, and H. E. Hook, tended to prove that Hess was foreman of defendant's bridge gang; that there were six cars in the outfit, one of which was fitted up and prepared by the defendant company for purposes of cooking and eating, another with bunks for sleeping, the remaining cars containing the bridge gang's tools and equipment for bridge work; that Hess hired and discharged the men of the bridge gang and the cooks. Hess testified that he was foreman of the bridge gang; that he worked under the direction of defendant's superintendent of bridges and building; that the latter knew of his employing cooks for the men and having them work in the car; that the company furnished all the cars including the cooking and dining car; also furnished fuel for cooking purposes, and permitted the transportation of the necessary provisions from place to place free of charge, and that such had been the custom since his connection with the company; that the cars constituting the bridge gang outfit were hauled from place to place, as occasion might require, according to his directions; that it was

always customary when any of the men quit work or were discharged, and their board bills were not paid by them, to attach such board bills to the payroll sent to the company, and that the company paid same. It was also in evidence that the defendant company, on two occasions, had paid the plaintiff board bills owing her by members of the bridge gang who had quit work. All this evidence tends to prove that Hess had authority to hire plaintiff as cook for defendant's bridge gang and to bind the defendant. That the defendant knew that plaintiff was employed as cook for its bridge gang is clearly indicated by the authority vested in Hess, the furnishing and preparation of a car for cooking and eating purposes, and the necessity therefor by reason of the movement of the bridge gang's equipment from place to place over the company's lines for the expeditious performance of its bridge work at points where, without the convenience of cooking and sleeping cars, it would at times be difficult to secure such necessary conveniences and accommodations for its men. In addition to this, as before stated, the company in two instances had paid board bills owing to plaintiff by two members of its bridge gang. Nor do we think that the admission of evidence as to the arrangement of the cars was error, as claimed by defendant, upon the ground that the company knew nothing of plaintiff's connection therewith. Plaintiff was in a sense in the service of the company in that what she was employed to do and was doing at the time of the injury was for the convenience and sustenance of the employees of the company, so that the men might thereby be able to put in more time at their work than they could if compelled to board elsewhere than on the car. Moreover, Ed Savage, a witness for defendant, who was foreman of the switch engine at the time of the injury, and whose duty it was, under the direction of the yard-master, to make up trains, testified that he

knew at the time of the movement of the train that the cars constituting the bridge gang outfit were attached thereto and that the cook's car was the hindmost or furthest removed from the engine. This witness, although he testified that he did not know plaintiff was in any car, must have known that the cook car was usually occupied by the cook, knowing the purposes for which that car was used.

Defendant's objection to the action of the court in admitting evidence that plaintiff was not given notice by defendant's servants that the car in which she was at work was about to be moved, seems to have been made under a misapprehension, as it appears from the record that all evidence as to notice of starting the train was stricken out, at plaintiff's suggestion, upon the ground that there was no allegation of negligence in starting the train.

There was, we think, no error in permitting Hook, one of the bridge men, and Ira Tinkle to testify to the custom of plaintiff to cook and the crew to eat while the train was in motion, such evidence tending to show that plaintiff was not guilty of negligence in standing up and washing the dishes while the train was in motion. It would have been impracticable, according to the evidence, to stop the train every time it was necessary to prepare and serve the meals and clean the dishes and utensils, and it had been plaintiff's custom to do this work while the train was in motion the same as while standing still. Nor was there error in permitting Ira Tinkle to testify as to the speed of the train just before the stop which resulted in the injury. He testified that he had had occasion while riding upon trains to note the comparative speed of trains, that he was able to tell approximately how fast a train in which he was riding was going, and that this train's speed, immediately before it stopped, was from ten to twelve miles per hour. It is true that this witness did not testify

that he had timed moving cars, and his evidence was not, of course, as important as would be that of a person of more experience, and better qualified to testify in this regard, but we think he was competent to testify in this case, the weight of his testimony being for the consideration of the jury. [Walsh v. Railroad, 102 Mo. 582; Aston v. Railroad, 105 Mo. App. 226.]

Defendant next insists that it sought to secure the written admission of plaintiff as to the accident, and offered her testimony with respect thereto, which consisted of plaintiff's admissions made on cross-examination, and which was, as contended, sufficient to authorize the introduction of the paper, but which was excluded on objection by plaintiff. While it appears from defendant's abstract that defendant offered in evidence the written statement of plaintiff as to the accident, and that it was excluded at the time for lack of sufficient identification, the defendant's additional abstract shows that thereafter, when the statement (Exhibit A) was again offered to be read in evidence and plaintiff's counsel objected thereto, the court overruled the objection and directed that the statement be read to the jury. It follows that there is no merit in this contention.

Defendant next assigns as error the action of the court in refusing to give instruction numbered one, asked by defendant, that "on the pleadings and the evidence plaintiff cannot recover." This contention is based upon the following propositions: 1. That the plaintiff's own evidence fails to prove such facts as are necessary to a recovery. 2. That on all the evidence in the case the jury should have been required to return a verdict for the defendant.

Of these in their order. Plaintiff testified in her own behalf substantially as follows:

I was standing on the right hand side of the car, next to the table, washing the dishes, while Mr. Tinkle

stood at my side and wiped them, at the time the accident occurred. An engine backed in and coupled on to the cars and pulled us out pretty rapidly, and stopped with a sudden bump, and throwed me down hard onto the floor, with my right hip down, and there was an awful pain in my right hip. Mr. Tinkle undertook to pick me up the best he could. I was hurt so bad I don't hardly know how he did pick me up, but they picked me up and carried me forward.

Being asked what kind of a stop the train made at the particular time, she answered: "It was a sudden and violent stop, I called it; just seemed to me like it couldn't have struck any quicker, and just seemed like it knocked me as hard on the floor as it could; seemed like every bone in my hip was broken. We was going pretty lively, and when they stopped they just stopped of a sudden and threw me with such violent force onto the floor." She also testified that Mr. Tinkle was knocked down at the same time, and that she was accustomed to the ordinary jumping and jamming made by freight trains.

On cross-examination, she testified that she could not tell how long the train was in motion before it came to a stop; that it started off nicely, but kept getting a little faster, and that when it stopped it stopped all of a sudden; that she was washing dishes at the time the train stopped. Being asked why she didn't sit down, she answered: "Because I hadn't been notified that they were going to pull us out or do any switching. . . . . I didn't know they was going to pull up just a little and then stop." She further testified that they always notified her when they were going to pull out or do any switching, and that then she generally did as the train men told her; that she was used to any ordinary jam or movement of the train, and that she was going about her work and doing as she had done a hundred times before; that she cooked and did

her work while the cars were running in like manner as when standing on the sidetrack.

Ira Tinkle's testimony, summarized, was as follows: After all had finished breakfast that morning on the car he went to the water car for water. While he was getting the water the train started in a westerly direction. He ran and caught the bunk car and climbed in, and in a minute or two after the train had run about a quarter of a mile at a good speed, it came to a sudden stop. Describing the stop he said "it was kind of an unreasonable jar or jam; looked like it came around against the side of the car, and jerked my hold loose from the door. I managed to stay on my feet." In answer to questions propounded to him, he said that he had occasion, while riding on trains, to notice their comparative speed, and could tell approximately, or had "a pretty good idea," how fast trains are running by riding on them. Being asked to tell the rate of speed, if he observed it, at which the train was moving just before the stop, he replied, "I judge it was going between ten and twelve miles an hour."

"Q. Now, I wish you would describe that stop, as near as you can, with reference to its suddenness? A. Well, all I can tell about this sudden stop—it stopped right there; it was quite a jam or jar; in fact it was the worst one we had on the cars as long as I was on them—mighty unusual.

"Q. When you got back into the cook's car, in what condition did you find things in the car? A. Well, the stove—we had a big range stove, and it sat flat on the floor, and we had put cleats around the stove to hold it in place, and the stove was reared up out of its socket and was standing up on the heavy cleats, and there was broken dishes on the floor, and I pried the stove back in its place."

H. E. Hook, a witness for plaintiff, testified that he was a member of the bridge gang at the time of and

before the accident; that Hess had authority to discharge the cook or the men, and that during all the time he was with the company Hess had charge of the employment of the members of the bridge gang and the cooks. The testimony of this witness with reference to the cooking and serving of meals and the washing of the dishes and utensils by plaintiff while the car was in motion was substantially the same as that of Mrs. Tinkle.

The substance of the evidence for the defendant, as before stated, was that the train was stopped in the usual manner, and that the jar was not greater than usual.

The defendant insists that this evidence fails to show any negligence on its part, and that the peremptory instruction asked should, therefore, have been given.

We think we are safe in saying that the facts disclosed by the record would not jusitfy our holding, as a matter of law, that plaintiff was guilty of negligence and that such negligence contributed to her injury. She was at the time engaged in the performance of her regular routine duties, such as she had been doing for a year or more without accident or injury to her person. In this case, however, to entitle plaintiff to a recovery, she not being a passenger for hire, it devolved upon her to show by a preponderance of the evidence that her injury was caused by the negligence of defendant's servants, agents and employees in charge of said engine and train in causing said train and the cook's car attached thereto, without any notice or warning to plaintiff of their intention so to do, to stop so suddenly as to cause a jerk and shock so violent as to throw plaintiff with great force against the floor of said car, thereby causing the injury, pain and suffering alleged in the petition. And in this connection it may be said that it is a matter of common knowledge that jolting

and jarring are incident to the operation of freight trains, and, therefore, to entitle plaintiff to recover, proof was necessary that the stop resulting in the jar and jolt which caused plaintiff's injury was so sudden and unusual and of such a character as to show negligence on the part of defendant's agents and servants in the operation of the train, and to endanger the life or limb of plaintiff, who they knew or should have known was an occupant of the cook's car attached to said train.

The defendant relies upon the case of Hedrick v. Railroad, 195 Mo. 104, as decisive of the case at bar, the court in the Hedrick case holding the evidence to be wholly insufficient to justify a recovery. In that case, however, the facts were much more unfavorable to the plaintiff than are the facts disclosed by the record in this case to Mrs. Tinkle. The plaintiff therein was a passenger upon a very long freight train which was slowly approaching on up grade, to a place where it was to take on another car. There was no evidence of any negligent act on the part of any of the train crew, except that the plaintiff testified that the train was in a manner stopped when he got up from his seat and started towards the rear end of the car; that then there was a jump as if caused by a collision, and for a moment or two he did not know what had happened but when he came to himself he felt that he was injured, and sat down on a seat, at which time the train was perfectly still. He testified that he could not tell whether he had been thrown down or not, but that when he came to himself he was on his feet; that he had traveled a number of times in cabooses attached to freight trains, and on freight trains, and that this jar was the severest he had ever experienced on a freight train—so severe that it upset the water tank in the car and jerked him senseless and injured his neck. On cross-examination, he testified that when he started to

go to the rear end of the caboose ''the train was barely moving; it was not running one mile an hour; not near as fast as a man could walk; the rate of speed was so that a child could walk and get off if it had not been jarred.'' He was asked whether he was thrown down and answered, ''Well, I do not know whether I was or not. Right there is where I never will be clear; I do not think I went to the floor. I was stunned for a minute or two.'' Asked whether or not he struck his head, neck or arm against anything in the caboose at that time, he answered, ''I think I kind of caught myself on the—against the door casing or against the door as it swung, the jar was so violent and severe.''

In Wait v. Railroad, 165 Mo. 612, the plaintiff, a passenger on one of defendant's trains, was told by the station agent at Milan from whom he had purchased a ticket, that the passenger coach of the freight train upon which he was to take passage would probably not stop at the platform, as it was the custom of the trainmen, when late, to attend to the freight business and then pull out without stopping, and that he had better go up the track some distance to where the passenger coach was standing and get on the car there. He did so, and the train started up with enough speed, as he thought, to indicate that it was off and would not stop. He, therefore, got out of his seat and stepped into the aisle to pull off his overcoat. The train suddenly stopped, and he was thrown against the seats and badly injured. There was no evidence tending to show any defect in the track, train or appliances, or any want of skill or care on the part of the train men, or that the train was stopped at an unusual place or in an improper manner, or that the shock which caused the plaintiff's fall was not a natural or ordinary incident of a proper stopping of the train. It was held that the trial court properly sustained a demurrer to the evi-

212 Sup—30

dence, there being no facts proved from which an inference of negligence on the part of the railroad company could be legitimately drawn.

In Erwin v. Railroad, 94 Mo. App. l. c. 298, the case of Wait v. Railroad, supra, was cited with approval, the court saying, "We think the Wait case a much stronger case than the one in hand, and for reasons stated in that case and stated in this opinion, we think the court erred in overruling defendant's demurrer to the evidence, wherefore the judgment is reversed." Guffey v. Railroad, 53 Mo. App. 462, is of much the same character as the case last cited.

In Portuchek v. Railroad, 101 Mo. App. 52, it is held that a passenger traveling on a freight train assumes all extra hazards incident to and inseparably connected with such method of traveling, and if injury is caused only by the jerk or jolt occasioned by the stopping of the train in the ordinary way, such person is not entitled to recover; citing Erwin v. Railroad, supra; Wait v. Railroad, supra; Railroad v. Arnol, 144 Ill. 261; Olds v. Railroad, 172 Mass. 73.

The authorities all hold that when a railroad company "carries passengers for hire on its freight trains it must exercise the same degree of care as is required in the operation of its regular passenger trains, the difference only being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance." [Wait v. Railroad, supra, and authorities cited.] In the case last cited, as also in the Hedrick case, there is quoted with approval the following from Railroad v. Arnol, supra: "Persons taking passage upon freight trains, or in a caboose or car attached to a freight train, cannot expect or require the conveniences or all of the safeguards against danger that they may demand upon trains devoted to passenger service, and are accordingly held to have accepted the accommodations provided

by the company, subject to all the ordinary inconveniences, delays and hazards incident to such trains, when made up and equipped in the ordinary manner of making up and equipping such trains, and managed with proper care and skill.'' But the degree of care required of the railroad company for the safety of its passengers is the same, whether it be a passenger or freight train, such care, or the charge of negligence, being considered in connection with the make-up, purpose, equipment and management of the different kinds of trains, as before indicated.

In the case at bar it is clear, we think, that the defendant knew that plaintiff was upon its train at the time of the occurrence which caused the injury; that the train was twenty-five or thirty cars in length, with no brakeman on the rear car; that it started smoothly, but soon attained a speed of from eight to twelve miles an hour, and after it had run about a quarter of a mile, and while plaintiff and her husband, as their custom was, were washing the dishes, it suddenly stopped, causing such a violent jar and jam as to throw her down with great force to the floor of the car, breaking her leg bone and crippling her for life, and threw her husband down at the same time; that the sudden stop and jar jerked her son's hold loose from the door of the bunk car, swung him around against the side of the car and almost threw him down; that it caused a heavy cast-iron cooking range, which had been fastened by cleats to the floor, to rear up out of its socket, and threw dishes on the floor and broke them; that plaintiff was given no warning that the train was switching or was about to stop. These facts make out a stronger case of negligence against the defendant than was made in either of the cases cited, and notwithstanding the fact that witnesses for the defendant testified that the stop was made in the usual way and was not more sudden than usual, the case was properly

submitted to the jury, as in none of those cases was the jar so severe as in the case in hand.

Defendant also contends that the peremptory instruction ought to have been given for the reason that the alleged injury arose out of a risk assumed by plaintiff.

As a general rule, the doctrine of assumption of risk pertains to controversies between masters and servants, though circumstances may arise between parties other than masters and servants when the doctrine may apply; but such defense is never available unless it rests upon contract; "or, if not exclusively on contract, then on an act done so spontaneously by the party against whom the defense is invoked that he was a volunteer, and any bad result of the act must be attributed to an exercise of his free volition, instead of to the conduct of his adversary. . . . . The word 'assumption' imports a contract, or some kindred act of an unconstrained will. Whenever a man does anything dangerous he encounters the risk, but it by no means follows that, legally speaking, he assumes the risk." [Fillingham v. Railroad, 102 Mo. App. l. c. 580.] There is nothing disclosed by the record in this case which removes it from the operation of the general rule, or which would justify the conclusion that the plaintiff assumed the risk. Moreover, the doctrine does not apply when the injury is occasioned by the negligence of the defendant.

It is further insisted that the peremptory instruction should have been given in view of the relation of defendant to the plaintiff and its duty to her. Defendant contends, first, that she was not a passenger; second, that she was not an employee, and that the relation of master and servant did not exist; third, that she was at most a mere licensee, and might reasonably be considered a trespasser.

We do not understand that it is contended that

plaintiff was a passenger on the train at the time of the injury, nor do we think she was; nor do we think plaintiff was an employee of defendant, for it is evident from the facts disclosed by the record that the relation of master and servant did not exist between them, although the services rendered by plaintiff were in furtherance of defendant's interests. But if not a direct employee of defendant, she was much more than a mere licensee. She was employed for defendant's benefit by defendant's foreman, with defendant's knowledge, and was put to work in the place fitted up and prepared for her by defendant, and there worked for over twelve months. The duties of plaintiff required her to be on her feet, moving around in the car, preparing and serving meals and cleaning up thereafter, whether the cars used by the bridge gang were in motion or not, and the defendant owed her a degree of ordinary care commensurate with her situation and the duties of her employment. And whether plaintiff was on the train as the servant of defendant, or as a licensee, she was at the time of the injury rendering services for the defendant's benefit, though it may not be directly, with its knowledge and consent, and it owed her the same duty it would any employee not engaged in operating the train, but riding therein on the business of the company. [Roddy v. Railroad, 104 Mo. 234; Pugmire v. Railroad, 92 Pac. 762.]

In Eason v. Railroad, 65 Tex. 577, it is held, in an action for personal injuries, that if the injured person is not a volunteer but engaged at the request or with the permission of the railroad's agent in a transaction of interest as well to himself or his master as to the railroad company, he is entitled to the same protection against the negligence of the company's servants as if he were at the time attending to his own private affairs. The court said: ''The principle upon which a recovery is allowed is this: The injured person is not

a volunteer, but engaged at the request or with the permission of the railway's agents in a transaction of interest as well to himself or his master as to the railroad company, and this entitles him to the same protection against the negligence of the company's servants as if he were at the time attending to his private affairs. Though performing a service beneficial to both, he is doing so in his own behalf, and not as a servant of the company. Their request or acquiescence gives him the right to perform the service; the fact that he acts in his own behalf, however beneficial his labor may be to the company, gives him the right to be protected against the negligence of the company's servants."

The same doctrine is announced in Ryan v. Boiler Works, 68 Mo. App. 148. See, also, Brown v. Sullivan, 71 Tex. 470.

Defendant asserts that instruction No. 1 ignores all the issues tendered by the petition and predicates the right of recovery on issues not presented by the pleadings, namely, that defendant contracted that plaintiff might "maintain the boarding car for the bridge gang," and that while engaged, under such contract, if injured by negligence "in the running or switching of one of its trains to which the car of plaintiff was attached," she was entitled to recover.

We are inclined to the opinion that the petition sufficiently alleges that plaintiff had contracted with the company, through its agent, Hess, foreman of the bridge gang, to maintain the boarding car and board the bridge gang, but it does not allege that she was injured by the negligence of defendant in the running and switching of the car. The allegation in the petition is that said "defendant, its agents, servants and employees in charge of said engine, improperly, negligently and carelessly caused said engine to suddenly stop with a sudden and violent jerk and shock, thereby

throwing the plaintiff with great force to the floor,''
etc.

There is a very material difference between the
running and switching of a freight train and the stop-
ping of it suddenly, with a violent jerk or shock.   If
this action were predicated simply upon negligence in
the running and switching of the train in this instance,
we should not hesitate to say that the plaintiff would
not be entitled to recover; but this instruction author-
izes a verdict upon that theory. The petition alleges
a specific act of negligence, and the instruction should
be in accord therewith.   Besides, the instruction en-
tirely ignores the issue of contributory negligence,
which was pleaded in the answer and which there was
some evidence tending to prove.   Our conclusion is
that said instruction is erroneous and misleading, and
that as instruction number three is bottomed upon that
instruction, it is also erroneous.

Defendant complains of the action of the court in
giving instruction number five, which declares the bur-
den of proving contributory negligence to be on the
defendant, not that it is not correct as a proposition of
law, but that it ought not to have been given in this
case, because the negligence of the plaintiff appeared
from her own evidence.   But defendant not only al-
leged in its answer that plaintiff was guilty of con-
tributory negligence, but adduced evidence in support
of that defense, and it is in no position to complain of
an instruction which its defense invited.

There was, we think, no error in refusing instruc-
tions numbers two, three and six asked by defendant.

In instruction number nine the court told the jury
that the plaintiff was entitled to recover for medical
services, without limiting the same to the amount
claimed in the petition for such services.   Upon retrial,
this should be corrected.   It is said that this instruc-
tion is erroneous by reason of the fact that the liability

for medical services rested on the husband and not on the wife, and that she was not entitled to recover therefor. If, as alleged in the petition, plaintiff on account of her injuries and in the endeavor to be healed thereof, was compelled to pay out divers sums of money, to-wit, the sum of two hundred dollars, for professional services of physicians and nurses, and for drugs, then she was entitled to recover therefor. [Sec. 4335, R. S. 1899.]

For the reasons indicated the judgment should be reversed and the cause remanded for further trial. It is so ordered. All concur.