EDITHE H. PENCE v. KANSAS CITY LAUNDRY SERVICE COMPANY, a Corporation, Appellant.—59 S. W. (2d) 633.

Division One, April 20, 1933.

*Henry L. Jost, Robert B. Caldwell* and *Harold M. Noble* for appellant; *Sebree, Jost & Sebree* and *McCune, Caldwell & Downing* of counsel.

934

*Cowgill & Popham, William K. Atwood, John F. Cook* and *John W. Franciscus* for respondent.

935

ATWOOD, J.—This appeal is attacked by respondent's motion to dismiss on the ground that the appeal allowed was from the circuit court's non-appealable orders overruling motion for new trial and motion in arrest of judgment, and not from the final judgment rendered in the cause.

In due time after final judgment was rendered for plaintiff defendant filed a document in the cause entitled Application and Affidavit for Appeal. The first matter therein appearing was defendant's motion by its attorneys requesting "the court to grant it an appeal to the Supreme Court of Missouri from the order and judgment of the court overruling its motion for new trial, and its motion in arrest of judgment in the above entitled cause." The other was an affidavit reciting that affiant "is one of the attorneys for Kansas City Laundry Service Company, defendant in the above entitled cause, and is authorized to and does make this affidavit in its behalf, and says that the appeal prayed for in said cause is not made for vexation or delay but because the affiant believes that the appellant is aggrieved by the judgment and decision of the court." The trial court's order allowing the appeal was that "said defendant's application and affidavit for appeal, heretofore filed by said defend-

ant, to the Supreme Court of the State of Missouri, having been by the court seen and heard, was by the court sustained, and appeal allowed to the Supreme Court of the State of Missouri.''

Appellant suggests that the motion to dismiss should be overruled because the matter complained of was neither called to the attention of the trial court nor lodged in this court until after appellant had filed its abstract of the record and brief, citing State ex rel. v. Broaddus, 210 Mo. 1, 15, 108 S. W. 544; Cassidy v. City of St. Joseph, 247 Mo. 197, 203, 152 S. W. 306; In re Estate of Messersmith v. Messersmith, 264 Mo. 610, 615, 175 S. W. 914. The doctrine invoked is thus stated in the Cassidy case, l. c. 203:

''It is now the settled doctrine of this court that the order of the circuit court granting an appeal, whatever may be its recitals, does not confer jurisdiction upon the appellate court in the absence of a sufficient affidavit to support such appeal. It is evident that to fill this requirement the affidavit must state, in substance, all that the statute requires, or must show on its face such an attempt to comply in good faith with all the statutory requirements as will impose upon the respondent the burden of making known his objections in time to prevent unnecessary loss and expense should it be held insufficient. This duty of making timely complaint exists in all such cases in which amendments are permissible; for a party should be permitted as against himself to waive the performance of that to which his adversary may be entitled as a matter of course.''

Respondent contends that the appeal granted in the instant case was from non-appealable orders and, therefore, void for want of jurisdiction. If the complaint is well grounded it is not untimely made. Lack of jurisdiction may be shown at any stage of the case and is always a proper matter of inquiry on the court's own motion.

The right of appeal is purely statutory and exists only in cases specified or reasonably within the statute. [DeJarnett v. Tickameyer, 328 Mo. 153, 40 S. W. (2d) 686; Thurman et al. v. Smith, 39 S. W. (2d) 336, 327 Mo. 894; Tevis v. Foley, 30 S. W. (2d) 68, 325 Mo. 1050, 1053; Segall v. Garlichs, 281 S. W. 693, 313 Mo. 406, 410.]

Section 1018, Revised Statutes 1929, specifies when appeals may be granted. It does not mention an order overruling a motion for a new trial or an order overruling a motion in arrest of judgment, and we have frequently held that appeals do not lie from such orders. [Lowe v. Frede, 258 Mo. 208, 167 S. W. 443; Wehrs v. Sullivan et al. (Mo. Sup.), 187 S. W. 825; Bonanomi v. Purcell et al., 230 S. W. 120, 123, 287 Mo. 436; Bonfils v. Martin's Food Service Co., 253 S. W. 982, 299 Mo. 500.] As stated in the Wehrs case (l. c. 326), the reason for this legislative omission is that ''such orders are but steps leading to the final judgment which follows, and from which an appeal is expressly given by the same statute.'' A final judgment

having thus been rendered the utter nonsense of applying for an appeal from such orders is apparent, and such an application should be disregarded if the circuit court's record shows that an appeal has been allowed in an appealable case and that all jurisdictional requirements necessary to authorize the order of allowance have been met. ■ These jurisdictional requirements are defined in Section 1020, Revised Statutes 1929, which is as follows:

"No such appeal shall be allowed unless: First, it be made during the term at which the judgment or decision appealed from was rendered; and, second, the appellant or his agent shall, during the same term, file in the court his affidavit, stating that such appeal is not made for vexation or delay, but because the affiant believes that the appellant is aggrieved by the judgment or decision of the court."

■ Of course, if the order itself purports to allow an appeal in a non-appealable matter its invalidity is apparent, but the order allowing the appeal in this case does not so read. It is in terms broad enough to authorize an appeal in any appealable matter. True, it sustains "defendant's application and affidavit for appeal, heretofore filed by said defendant," but Section 1020 does not require the filing of a written application for an appeal, and timely filing of an affidavit substantially in the form prescribed by statute is sufficient to sustain an order granting an appeal in appealable matters, the affidavit itself being treated as an application for appeal. The words above quoted might be construed either as referring to the application expressed or implied in the affidavit filed or to the separate written application filed. Inasmuch as the filing of an affidavit for appeal is a jurisdictional requirement while the filing of a written application is not, the first mentioned permissible construction should be adopted.

■ Looking then to the affidavit for identification of the matter appealed from, and no other question is raised as to the sufficiency of the appeal, we find the essential averment that "affiant believes that the appellant is aggrieved" not by the court's orders overruling the motion for a new trial and the motion in arrest of judgment but "by the judgment and decision of the court." It appears from the abstract of the record that there was only one judgment rendered in the cause and that was a final judgment which was the only appealable matter before the court. Rulings of the court upon motions are not judgments of the court. [State ex rel. Shackelford v. McElhinney, 241 Mo. 592, 608, 145 S. W. 1139.]

Counsel for respondent call attention to the fact that defendant's application for appeal and affidavit for appeal, though separately executed, appear on the same sheet of paper, and they insist that the former is in effect incorporated in the latter by affiant's averment in the affidavit that "the appeal prayed for in said cause is not made

938

for vexation or delay," etc. This language may be fairly construed as an application for appeal expressed in the affidavit itself and relating only to the judgment subsequently specified therein. Certainly it should not be construed so as to destroy such unmistakable identification of the matter appealed from in the cause.

Counsel for respondent strongly urge that our decision in Bonfils v. Martin's Food Service Co., 299 Mo. 500, 253 S. W. 982, entitles her to a dismissal of the appeal in this case. According to the opinion in the Bonfils case the application for appeal prayed for "an appeal in this cause from the order overruling the motion in arrest of judgment to the Supreme Court of Missouri," and the opinion states (l. c. 505) : "This application was sustained and the appeal granted as therein prayed." The opinion neither states nor considers the contents of the affidavit for appeal, and it was obviously unnecessary to consider the affidavit if the order allowing the appeal was as prayed in the application set forth. As heretofore suggested, such an order would be void on its face because its very terms would disclose an attempt to grant an appeal in a non-appealable matter. The situation presented in the instant case is wholly different. The order is broad enough to cover an appeal in any appealable matter, and the affidavit clearly discloses that the matter appealed from is the final judgment in the cause. The motion to dismiss is overruled because it is apparent that, notwithstanding matter unnecessarily injected, upon the whole record the trial court had jurisdiction to grant the appeal.

Proceeding to the merits of the appeal we find that it is from a judgment in favor of plaintiff for damages in the sum of $60,000 on account of personal injuries alleged to have been sustained by her in a collision of one of defendant's laundry trucks and an automobile driven by plaintiff's husband in which she was riding, which collision was alleged to have been directly and proximately caused by defendant's negligence in the respects pleaded. Such of appellant's assignments of error as are covered in its points and authorities and developed in its briefs and argument relate to instructions given at plaintiff's request, interrogation of the jury panel by plaintiff's counsel, and the size of the verdict. In the course of ruling these points the pleadings and evidence will be stated insofar as deemed pertinent.

Instructions 1, 2 and 3, given at plaintiff's request, respectively submitted her pleaded grounds of specific negligence as follows: dangerous, excessive and negligent rate of speed; failure to keep a vigilant lookout ahead on approaching the street intersection where the accident occurred; and violation of a city ordinance in operating a motor vehicle over a public street intersection at a rate of speed in excess of fifteen miles per hour. Each of these instructions authorized a verdict for plaintiff on the specific ground of negligence

therein submitted if the jury further found "that as a direct result thereof" defendant's laundry truck collided with the Pence car and that plaintiff "used ordinary care for her own safety at all times referred to in evidence." They are criticized as submitting the case "on the theory that as a matter of law plaintiff was a guest and mere passenger of her husband in his automobile at the time of the collision."

Plaintiff alleged in her petition that at the time of the collision she was riding as "an occupant of an automobile being driven by her husband." Defendant went to trial on its amended answer consisting of a general denial and allegations that at the time of the accident plaintiff and her husband were in joint control of the automobile he was driving and that plaintiff's "said injuries, if any, were caused by the negligence and carelessness of the said plaintiff in conjunction with her husband" in certain respects pleaded. The reply was a general denial. If plaintiff was not a guest or invitee but was making the trip on her own account or in a joint enterprise with her husband and was in joint control of the car, as defendant alleged in its answer and contended at the trial, then her husband as the driver of the car would have been required to exercise the highest degree of care (Sec. 7775, R. S. 1929), and his negligence, if any, in failing to exercise such care would be imputed to her and, thus becoming her negligence, would bar her recovery if it caused or contributed to cause the collision and injuries alleged to have resulted therefrom. [Tannehill v. Railroad, 279 Mo. 158, 213 S. W. 818, 822.] ██ On the other hand, if plaintiff was a mere guest or invitee the negligence of the driver of the car would not be imputed to her, and she would be chargeable only with her own negligence causing or contributing to cause the collision and alleged resulting injuries. [Corn v. Ry. Co. (Mo. Sup.), 228 S. W. 78, 82.] ██ A defendant is liable if his negligence was the direct and proximate cause of the injury, unless the plaintiff has also been guilty of such negligence as directly contributed to the happening of the injury, and the defendant is not liable no matter how negligent he may have been if the plaintiff's negligence has thus contributed to the injury. In each instance the negligence and the contributory negligence must be direct, that is, must have entered into and formed a part of the efficient cause of the accident. [Oates v. Street Ry. Co., 168 Mo. 535, 548, 68 S. W. 906, and cases cited.]

██ Inasmuch as each of these three instructions authorized a verdict for plaintiff on the specific act of defendant's negligence submitted, if the jury further found that defendant's laundry truck collided with the Pence car "as a direct result thereof" and that plaintiff "used ordinary care for her own safety at all times referred to in evidence," it seems clear that they utterly ignored the

940

defense of plaintiff's contributory negligence growing out of the alleged joint control of the car which was substantially supported by pleadings and proof. The issue of such joint control was expressly recognized in instruction numbered 4 given at plaintiff's request. If such joint control existed then plaintiff was chargeable with the degree of care required of the driver, to-wit, the highest, and it was reversible error to give these instructions on the whole case without hypothesizing this phase of contributory negligence which was not submitted in any other instruction. [State ex rel. Security Ins. Co. v. Trimble et al., 318 Mo. 173, 180, 300 S. W. 812; State ex rel. Ins. Co. v. Cox, 307 Mo. 194, 197, 270 S. W. 113; Tinkle v. Railroad, 212 Mo. 445, 471, 110 S. W. 1086.] A defendant is liable if his negligence was the direct and proximate cause of the injuries complained of, unless the plaintiff has also been guilty of such negligence as directly contributed thereto. It was not enough to require the jury to find that the collision was "a direct result" of defendant's negligence and that plaintiff "used ordinary care for her own safety at all times referred to in evidence." If plaintiff's own negligence or negligence properly imputed to her mingled with defendant's negligence as a direct and proximate cause of her injuries she could not recover (Oates v. Street Ry. Co., supra, l. c. 548, 549), and the jury should have been so instructed.

 Appellant also assigns error to the giving of instruction numbered 4, which instruction is as follows:

"The court instructs the jury if you believe from the evidence that the Pence automobile was exclusively owned by Dr. Pence and that he was driving it and exclusively in control of it at the time of the collision, if you so find, and that Mrs. Pence was riding with him by his permission and consent and that she had nothing to do with the driving or control thereof, if you so find, then any negligence, if any there was, on the part of her husband would not in law be imputable or chargeable to her, and if you believe from the evidence that plaintiff at all times used ordinary care for her own safety and that defendant Kansas City Laundry Service Company was guilty of negligence in the respects submitted to you in the other instructions herein, then the fact, if it be a fact, that her husband was also negligent would not constitute a defense to her action for damages against the defendant, and this would be true and she could still recover herein, even though you should believe that both the laundry company in the respects submitted in these instructions and her husband were negligent, and that the negligence, if any, of both defendant and her husband joined and concurred and cooperated in producing said collision and the injuries, if any, to plaintiff at said time and place."

Counsel for appellant say that use of the word "chargeable" had

the practical effect of ''reading the issue of contributory negligence on the part of the plaintiff entirely out of the case.'' While only the word ''imputable'' is generally used in such instructions we find no reversible error in also using its synonym. If plaintiff was only a guest in the car any negligence on the part of the driver of the car would not in law be imputable to her (Corn v. Railway, 228 S. W. 78; Stevens v. Laundry Co., 25 S. W. (2d) 491, and similar cases), but it seems plain that this instruction did not mean that plaintiff herself might not be guilty of contributory negligence for it required the jury to find ''that plaintiff at all times used ordinary care for her own safety.''

It is also said that this instruction ''ignored the question of cause and relieved plaintiff from any necessity of showing any causal connection between the alleged negligence of defendant's driver and the injuries complained of.'' While causal connection was suggested in the last three lines of the instruction we do think the direction as given was on the whole confusing and misleading because the jury was not required to find as a condition of plaintiff's recovery that defendant's ''negligence in the respects submitted'' directly caused or contributed to cause her injuries. The premise submitted was that the jury find defendant ''guilty of negligence in the respects submitted to you in the instructions herein,'' and could only refer to the acts and omissions which the court there said would constitute negligence if found. It did not require a finding that such acts of negligence directly caused or contributed to cause the collision and injuries alleged to have resulted therefrom. Consequently, the declaration that plaintiff ''could still recover herein,'' prefacing the latter hypotheses of this instruction, presented the confusing implication that such a finding was unnecessary to authorize a verdict for plaintiff under ''the other instructions herein.'' This ambiguity should be removed on a resubmission of the cause.

Appellant next complains of the giving of instruction number 5, which instruction is as follows:

''The court instructs the jury if you believe from the evidence that as the laundry truck approached said intersection the Pence car and its occupants were in or coming into a position of danger and were in imminent peril from being collided with by the laundry truck and injured, if so, and that the driver of said laundry truck either saw or by using the highest degree of care could have seen such peril and danger, if any, in time thereafter by the use of the means at hand and with safety to said laundry truck and the driver thereof to have either stopped said laundry truck or slackened the speed of said laundry truck or changed the course of said laundry truck and thereby have prevented said collision and prevented Mrs. Pence being injured, if you so find, and that the driver of said laundry truck

942

failed to use such highest degree of care so to do, if you so find, and that as a direct result thereof said collision occurred and plaintiff was injured thereby, if you so find, then your verdict must be for plaintiff Mrs. Pence and against defendant under this particular instruction, even though you should believe from the evidence that Mrs. Pence failed to use ordinary care for her own safety and that both Dr. and Mrs. Pence were careless in getting into the position they were in at the time of the collision.''

Plaintiff testified that at the time of the accident the car in which she was riding was being driven east on Twenty-seventh Street in Kansas City, Missouri, by her husband; that they approached its intersection with Tracy Avenue, a street running north and south, at a speed of fifteen to twenty miles an hour; that before entering this intersection the car was slowed down to a speed of ten or fifteen miles an hour; that shrubbery in a yard at the southwest corner of the intersection somewhat obscured the view south on Tracy but she looked and saw no car approaching from that direction; that her husband started to drive on east through the intersection at a speed of ten or fifteen miles an hour and had about reached the middle of the intersection, still driving at the same rate of speed, when she first observed defendant's laundry truck fifty or sixty feet away approaching on the east side of Tracy from the south at a speed of thirty-five or forty miles an hour; that not thinking they were in any immediate danger she glanced away and when she looked again defendant's truck was only five or ten feet from them; that her husband immediately swerved his car to the left to avoid a collision with the truck but the latter struck the rear of the car in which they were riding, turning it over and injuring her. The testimony was conflicting as to which car first entered the intersection but the violence of the collision was well evidenced by the crushed radiator, broken right front wheel, exploded tires, torn doors and scattered contents of the truck which was also overturned.

Counsel for appellant first say that no case was made for the jury under the humanitarian rule because according to plaintiff's estimates of the speed of the two cars the collision would not or need not have occurred if the speed of the car in which plaintiff was riding had been only slightly increased. The accuracy of speed estimates of the ordinary person made in emergencies like this are by no means conclusive, but physical facts attending the collision speak for themselves and a substantial inference of high speed on the part of the truck driver may be drawn therefrom in this case. If the Pence car was the first to enter the intersection and was going at a rate of ten or fifteen miles an hour, and there was corroborative evidence to this effect, it must have been in plain view of the driver of defendant's truck before he entered the intersection. He admitted

he was driving at least twenty miles an hour and when within twenty-five feet of the intersection he "let the car out in high." There was substantial evidence that he was driving much faster but whatever his speed he testified that at the rate he was driving he could have stopped the truck within five feet. Of course, if the Pence car was going at a very high rate of speed and shot in front of him like a "black streak," as counsel for appellant contend, the situation would have been different, but there was ample evidence to the contrary making this a question for the jury. Twenty-seventh Street was thirty-six feet and two and one-half inches between the curbs and Tracy was twenty-eight feet and five inches from curb to curb. When plaintiff glanced away from defendant's truck she was at least half way across Tracy Avenue. According to plaintiff's speed estimates there was no immediate danger of a collision when she glanced away, but when she looked again the truck was practically upon them. Confronted in broad daylight with a car which plaintiff and other witnesses said was already in the middle of the street intersection and going ten or fifteen miles an hour, it appears that defendant's driver entered the intersection at an increased rather than a diminished rate of speed without changing his course so as to avoid a collision. We think a case was made for the jury under the humanitarian rule.

Counsel for appellant also say that above Instruction 5 was erroneous in permitting the jury to find for plaintiff "under this particular instruction, even though you should believe from the evidence that Mrs. Pence failed to use ordinary care for her own safety and that both Dr. and Mrs. Pence were careless in getting into the position they were in at the time of the collision." Plaintiff's contributory negligence is not a defense in a case made under the humanitarian rule (Burke v. Pappas, 293 S. W. 142, 145. 316 Mo. 1235; Schulz v. Smercina, 1 S. W. (2d) 113, 120, 318 Mo. 486; Thompson v. Quincy, O. & K. C. R. Co. (Mo. Sup.), 18 S. W. (2d) 401, 404, 405), but as this defense was available in the submission of other grounds of negligence herein it was proper to call attention in this instruction to its nonapplicability under this theory of the case. For this very reason it was appropriate to limit a verdict on such theory to findings "under this particular instruction."

Appellant's next point is stated thus: "The court erred in permitting counsel for plaintiff to interrogate of the jury panel whether they had in mind any fixed amount beyond which they would not render a verdict as such inquiry did not tend to elicit the proper qualification of jurors and carried the inference that this was a very exceptional lawsuit for which generally accepted standards of compensation did not apply, and that members were not qualified to act as jurors unless willing to return an exceptionally large verdict."

944

The jury panel was generally so interrogated on *voir dire* examination and in a manner not to be approved, but the record shows no ruling challenged and exception taken by defendant's counsel then or on that account. The only exceptions preserved relate to the later examination by plaintiff's counsel of one member of the panel whom counsel for plaintiff wanted excused and counsel for defendant wanted retained and whom the court finally retained on the panel. The objection made and exceptions saved to the court's ruling in permitting this interrogation were solely on the ground that it was argumentative and "unfair and assuming that the juror's mind would be in such a condition as he enters the jury box that he would reject and refuse to consider certain evidence before he could get to a place where he could consider a verdict." Counsel for defendant did not request that the panel be discharged, or that plaintiff's counsel be rebuked, nor did they indicate in this objection that the examination in anywise tended to prejudice members of the panel. On the state of the record and the point here made we do not think the trial court should be convicted of reversible error in overruling defendant's objection.

Inasmuch as the judgment should be reversed and the cause remanded for a new trial appellant's assignment that the verdict is excessive will not be ruled.

 Counsel for appellant list other assignments of error which they have not seen fit to carry forward under the head of points and authorities except by the most general reference and this without citation of any supporting authorities or any elaboration or discussion whatever in briefs. This is not such compliance with our Rule 15 as entitles these assignments to our consideration on appeal.

For the reasons above stated the judgment is reversed and the cause remanded. All concur.