JAMES E. TANNEHILL, Curator of Estate of RUTH E. TANNEHILL et al., Appellant, v. KANSAS CITY, CLINTON & SPRINGFIELD RAILWAY COMPANY.

Division Two, July 5, 1919.

1. **NEGLIGENCE: Contributory: Demurrer to Evidence.** If the evidence adduced by plaintiff proves his own contributory negligence as a matter of law, and there is no room in the case for the last-chance doctrine, defendant's demurrer to the evidence should be sustained, although the evidence also establishes defendant's

Tannehill v. Railroad.

prima-facie negligence. In such case plaintiff's evidence establishing his own contributory negligence destroys the prima-facie negligence of defendant. And a demurrer to his evidence in such case is certainly available where there is a defensive plea of contributory negligence, and on reason and authority it would be available without such plea.

2. ——: ——: ——: **Bad Weather Conditions: Ringing Bell.** Conceding that the failure of the trainmen to ring the bell or sound the whistle as the train approached a public-street crossing constituted prima-facie negligence on the part of defendant, and conceding further that bad weather conditions were prevailing, yet as plaintiff's own evidence is to the effect that under ordinary conditions the driver of the automobile could have seen the train a quarter of a mile away from a place 400 feet from the crossing, and that the automobile was forty or fifty feet from the crossing when the driver last looked, and he went ahead, traveling up-grade at the rate of five or six miles per hour and could have stopped in a space of eight or ten feet, and without looking again, attempted to cross the track and the automobile was struck by the train, it must be held as a matter of law that the driver was guilty of contributory negligence, which, under the other facts, bars a right to recover damages for the death of the driver's brother, sitting in the automobile.

3. ——: ——: **Imputed to Joint Owner.** The contributory negligence of the driver is to be attributed to his brother who was a joint owner of the automobile, was engaged with him in a joint enterprise and was riding with him in the automobile at the time of its collision with a railroad train.

4. ——: ——: **Humanitarian Rule.** If the driver of the automobile could see the railroad train for the first time when it was 200 feet from the crossing, it must be assumed that the trainmen could not see the automobile at a greater distance, and if the uncontradicted evidence is that the train could have been stopped only in from 400 to 600 feet, there is no place in the case for the humanitarian doctrine, that the trainmen could have stopped the train, after they saw the driver's peril, in time to have avoided striking his automobile.

Appeal from Cass Circuit Court.—*Hon. Andrew A. Whitsett*, Judge.

AFFIRMED.

*L. M. Crouch, Parks & Son* and *Campbell & Campbell* for appellant.

(1) "Contributory negligence, as a rule, is a matter of defense, which must be pleaded and proved by the defendant. When plaintiff makes out a prima-facie case, entitling him to go to the jury, the burden then shifts to the defendant, if he relies upon plaintiff's negligence, to disprove and overcome that case, to the satisfaction of the jury. And the prima-facie case for plaintiff having been made out, the case can never be peremptorily taken from the jury; for, however strong the countervailing testimony of plaintiff's contributory negligence may be, its credibility and weight are for the jury." Peterson v. C. & A. Ry. Co., 265 Mo. 462; Farrar v. Met. St. Ry. Co., 249 Mo. 210; Taylor v. Met. St. Ry., 256 Mo. 191, l. c. 213, 215; Krehmeyer v. Transit Co., 220 Mo. 639; DeRousse v. West, 200 S. W. 783; Kennayde v. Railroad, 45 Mo. 255; Underwood v. Ry. Co., 190 Mo. App. 407; Thornsberry v. Ry. Co., 178 S. W. 197, l. c. 200, par. 5; Hubbard v. Lusk, 181 S. W. 1028; Goebel v. United Rys. Co., 181 S. W. 1051; Montague v. Mo. & K. I. Ry. Co., 193 S. W. 935; Walker v. Wabash Ry. Co., 193 Mo. App. 249. (2) "On demurrer to the evidence, plaintiff is entitled to every favorable or reasonable inference arising therefrom." Lamport v. Fire & Life Assn. Co., 197 S. W. 95; Hanser v. Bieber, 197 S. W. 68; Jetter v. St. Joseph Terminal Ry. Co., 193 S. W. 956; Hendrix v. United Rys. Co., 193 S. W. 812; Montague v. Mo. & K. I. Ry. Co., 193 S. W. 935; Campbell v. St. L. & Sub. Ry. Co., 175 Mo. 161. (3) the presumption of due care on the part of H. Earl Tannehill accompained him, as he approached the railway crossing, regardless of whether or not there was any evidence to show that he looked and listened for an approaching train. McQuitty v. Kansas City Southern Ry. Co., 194 S. W. 888; Underwood v. St. L. I. M. & S. Ry. Co., 190 Mo. App. 415; Hubbard v. Lusk, 181 S. W. 1031. (4) The demurrer should have been overruled

and the case submitted to the jury, under the evidence in the case and under the pleadings under the humanitarian or last-chance doctrine. Ellis v. Metr. St. Ry. Co., 234 Mo. 657; Flynn v. Metr. St. Ry. Co., 166 Mo. App. 187; Bruening v. St. Ry. Co., 181 Mo. App. 264; Norders v. Metr. St. Ry. Co., 168 Mo. App. 172; Flack v. Railroad, 162 Mo. App. 650; Cole v. Metr. St. Ry. Co., 133 Mo. App. 440; McNamara v. St. Ry. Co., 133 Mo. App. 645; Delmar v. Metr. St. Ry. Co., 136 Mo. App. 443; Sheldon v. St. Ry. Co., 167 Mo. App. 404; Johnson v. Traction Co., 176 Mo. App. 174; Crutcher v. Railroad, 241 Mo. 137; Taylor v. Railroad, 256 Mo. 191; Strauss v. Railroad, 166 Mo. App. 153; White v. Railroad, 202 Mo. 539; King v. Wabash Ry. Co., 211 Mo. 1; Shipley v. Metr. Str. Ry. Co., 144 Mo. App. 7; Lynch v. C. & A. Ry. Co, 208 Mo. 1; Reyburn v. Railroad, 187 Mo. 575; Rine v. Railroad, 100 Mo. 234; Krehmeyer v. Transit Co., 220 Mo. 639; Farrar v. Metr. Str. Ry. Co., 249 Mo. 220. (5) The negligence, if any, of Thos. P. Tannehill, could not be imputed to H. Earl Tannehill, for the evidence shows that H. Earl Tannehill was not driving the automobile, nor was he in any way exercising any control over the car or in any way directing Thos. P. Tannehill in its control and management, but on the contrary Thos. P. Tannehill had the exclusive control over its operation and management. Johnson v. Traction Co., 176 Mo. App. 185; Moon v. St. Louis Transit Co., 237 Mo. 434; Stotler v. C. & A. Ry. Co., 200 Mo. 146-148; Farrar v. Metr. St. Ry. Co., 249 Mo. 219; Sluder v. Transit Co., 189 Mo. 107; Ebert v. Metr. St. Ry. Co., 174 Mo. App. 45; Connor v. Railroad, 149 Mo. App. 675; Diskon v. Railroad, 104 Mo. 491; Baxter v. St. Louis Transit Co., 103 Mo. App. 598; Keitel v. Railroad, 28 Mo. App. 657.

*John H. Lucas, Wm. C. Lucas* and *D. C. Barnett* for respondent.

(1) There was no evidence on which to base a submission of either of the two alleged acts of negligence,

11—279 Mo.

viz.: Failure to sound the whistle or ring the bell. There was an entire failure of proof of either allegation. The rule is well established "when the evidence is of such a character that the trial judge would have a plain duty to perform in setting aside the verdict as unsupported by the evidence, it is his duty and prerogative to interfere before submission to the jury and direct a verdict for the defendant." Jackson v. Hardin, 83 Mo. 175; Hite v. Metroplitan St. Railway Co., 130 Mo. 132; Warner v. St. L. & M. R. Railroad, 178 Mo. 132; Waggoner v. Railroad, 152 Mo. App. 179; Weltmer v. Bishop, 171 Mo. 116; Sexton v. Met. St. Ry. Co., 245 Mo. 272; Burge v. Wabash Railroad, 244 Mo. 94. (2) The deceased was guilty of such contributory negligence as barred a recovery. McManamee v. Mo. Pac. Ry. Co., 135 Mo. 449; Huggart v. Mo. Pac. Ry. Co., 134 Mo. 679; Kelsay .v. Mo. Pac. Ry. Co., 129 Mo. 372. (3) There is no room for the application of the humanitarian rule, and the claim therefor is without substantive evidence to support the contention. Keele v. A., T. & S. F. Railroad, 258 Mo. 77; McGee v. Wabash Railroad, 214 Mo. 541; Rollison v. Wabash Railroad, 252 Mo. 537; Phippin v. Mo. Pac. Ry. Co., 196 Mo. 343. (4) The final contention is that as the deceased was not driving the car he was absolved from the exercise of ordinary care, a contention unsustained in reason and unsupported by precedent. It was the duty of the deceased to look and listen for the approaching train, and this duty could not be shifted to his business associate. Burton v. Pryor, 198 S. W. 1120; Erie R. R. Co. v. Hurlburt, 221 Fed. 907; Brommer v. Penn. Railroad, 29 L. R. A. 924; Coby v. Q., O. & K. C. Railroad 174 Mo. App. 648.

FARIS, J.—Appellant as the curator of certain minor children of one H. Earl Tennehill, deceased, sued to recover damages for the negligent killing of the latter by a passenger train of defendant. Upon a trial *nisi*, the court at the close of plaintiff's case in chief sustained defendant's demurrer to the evidence. There-

upon plaintiff took a voluntary nonsuit with leave. Cast in his motion to set this nonsuit aside, plaintiff in the conventional mode appealed.

The grounds upon which plaintiff, pursuant to his petition, seeks to fix liability upon defendant, are: (a) The failure and neglect of defendant's servants, agents and employees in charge of said train to sound the whistle or ring the bell upon defendant's locomotive at the crossing where the decedent was struck and killed, and (b) the negligent failure to avoid striking and killing decedent at a place whereat he could and ought to have been seen in a position of danger in time to have stopped the train and thus avoided killing him. Defendant's answer is a general denial and a plea of decedent's contributory negligence.

Decedent, who lived at Garden City, Missouri, while riding in an automobile, was struck and killed, at a grade crossing of a public highway, called in the record the "Kenagy Crossing," on December 18, 1914. The time was about one o'clock in the afternoon. The train was practically on time. The day was cloudy and overcast, damp and foggy, or misty. A light snow partially covered the ground, and the roads were muddy, or slushy. The railroad and the highway crossed at an angle of forty-five degrees.

Decedent and one of his brothers were returning to their home at Garden City from a trip to Clinton in an automobile. Decedent's brother was driving the car, which car was jointly owned by decedent, the brother who was driving, and another brother. The curtains of the car were down as the car approached this crossing, though a view of objects to the side was obtainable through celluloid covered spaces, or windows, some seven or eight inches by twelve or fourteen inches in dimensions. Decedent was about thirty-five years of age, and slightly hard of hearing. His business was that of a real estate agent, wherein he seems to have been engaged with the brother in question, and perhaps with another brother, at his home town of Garden City.

The only eye-witness who testified upon the trial was the brother of decedent, who, as stated, was driving the car at the time the decedent was killed. Upon the testimony of this brother the case, of necessity, must largely turn. He says that as he and decedent approached this crossing and, when at a distance of some 400 feet therefrom, he looked for an approaching train; that he knew a train was due from the south at about one o'clock, but that he did not know what time of day it was. Seeing no train, though from the point at which he looked a train coming as was the one which killed decedent could ordinarily have been seen when a quarter of a mile distant from the crossing, he continued driving. When he and decedent reached a point some forty feet from the crossing and while driving on an up-grade at the rate of five or six miles an hour, he again looked for a train. From this last point of observation, a train could ordinarily have been seen a quarter of a mile away, but on this day, on account of the prevailing weather conditions, the witness says, he could only have seen a train when the same was some 200 feet distant from the crossing. Seeing no train from this final point of observation, hearing none, and hearing no crossing signals, he looked in the other direction toward Garden City and continued driving until he reached the railroad track. There he suddenly saw the locomotive right upon him, and was instantly struck, and hurled with the car and decedent some 100 feet. From this impact decedent was fatally injured, dying in the afternoon of the same day, and the witness rendered unconscious for some few minutes. The automobile, this witness says, at the rate it was traveling when struck, could have been stopped in from eight to ten feet.

Whether the required statutory signals were given by sounding a whistle, or whether the train on this day and at this time was visible at a greater distance than that stated by decedent's brother, is contradictory upon the record before us; some of plaintiff's witnesses saying these signals were given, some that they were not given,

and some that if they were given the witnesses did not hear them. Touching the visibility of the train, so far as such visibility was affected by existing wheather conditions, some of plaintiff's witnesses say they actually saw it on this day and at this time, while it was from a quarter of a mile to a mile and a half away. This, however, by the way, for the rule requires us here to apply every inference in favor of plaintiff, and to consider in his favor the very highest points shown by the proof.

Since the case is a fact case, we will on this account reserve other facts for recital when we shall come to discuss what we deem to be the controlling law of the case.

I. As forcast, this case presents but one question; that question is, was the evidence sufficient to take the case to the jury? Plaintiff in effect contends,

Contributory Negligence. with absolute correctness, we think (*if it were, or could here be, considered alone*), that there was sufficient evidence of one element of negligence pleaded, that is, as to the failure of the defendant to sound the whistle or ring the bell upon the engine (Sec. 3140, R. S. 1909), as to constitute prima-facie negligence, to take the case to the jury. In this connection, plaintiff urges upon us the rule stated in the case of Peterson v. Railroad, 265 Mo. 462, which rule he excerpts bodily from the syllabus of the case. Taking the rule stated in the Peterson case as his text, plaintiff insists that since contributory negligence is an affirmative defense, the moment a prima-facie case bottomed upon defendant's negligence is made out, every such case must go to the jury, and therefore this case ought to have gone to the jury.

This view, we think, leaves out of consideration another controlling point by which the rule contended for is in a proper case always modified. That point is, that even if the plaintiff's evidence make out a prima-facie case, or, to be more exact, *make out proof of defendant's negligence,* yet if in developing such a case

the evidence adduced by plaintiff also proves plaintiff's own contributory negligence as a matter of law, then the case is not one for the jury, but is one for the court, and the court ought to sustain a demurrer to the evidence. [Sissel v. Railroad, 214 Mo. 515.]

In the Sissel case, supra, GRAVES, J. upon a point presented in that case which was much similar, and wholly analogous upon principle, said at page 526, this: "Even though there was no plea of contributory negligence, yet the trial court would be authorized to take a case from the jury upon a demurrer to the evidence whenever it was shown by plaintiff's own proof there was contributory negligence, such as to preclude a recovery. Without a proper plea of contributory negligence the defendant should not be permitted to show, affirmatively, by his proof, that there was contributory negligence, but where the witnesses for plaintiff disclose the facts, and the court is thus possessed of them, such court has but one course to follow, and that is to say that by plaintiff's proof no case has been made. The rule which this court has followed is thus stated in 5 Ency. Plead. & Prac., p. 13: 'The defendant may take advantage of contributory negligence which is shown in the development of the plaintiff's case, although he has not pleaded it as a defense.' "

In the instant case, there is a defensive plea of contributory negligence. If plaintiff may not recover when his own evidence, or evidence which he offers, shows contributory negligence as a matter of law, even when defendant has not pleaded such contributory negligence, then *a fortiori* he cannot recover in such situation *when defendant has interposed this plea*. Even the case of Peterson v. Railroad, supra, which seemingly is largely relied on by plaintiff, does not, when the facts in that case are examined, nor even when the language used is carefully read, bear out the rule contended for by plaintiff. For the learned writer of that opinion, in stating the rule which is urged upon us, was careful to restrict it to cases wherein the prima-

facie case had been made out, thus clearly negativing its application to a case wherein, though prima-facie the negligence of defendant is shown, yet goes farther and destroys such prima-facie case before he stops offering evidence, by proving his own contributory negligence as a matter of law. The rule we cite from the Sissel case is too well-settled for either dispute or cavil.

Applying this rule to the facts shown in evidence in the instant case, we are of the opinion that the plaintiff's proof shows contributory negligence of decedent as a matter of law, and thus precludes plaintiff's recovery. Numerous witnesses offered by plaintiff testified to having seen the train which killed decedent when it was from a quarter of a mile or a mile, or more, distant. Witnesses for plaintiff who were half a mile away at the moment the train struck the car could even see the car, or the debris therefrom, flying through the air. But we concede, of course, that decedent was not under the rule enjoined on us in this sort of case, required to see the train as others saw it. If there be a witness who says that the weather conditions prevailing prevented the seeing of it at so great a distance, the case, so far as this phase is concerned, is one for the jury. [Lamport v. Ins. Co., 197 S. W. 95; Hanser v. Bieber, 197 S. W. 68; Campbell v. Railroad, 175 Mo. 161].

The brother of decedent, who was in the car driving it at and prior to the moment at which the latter was struck and killed, says that he could have seen the train, under ordinary conditions, a quarter of a mile away, at a time and from a place whereat the automobile was 400 feet distant from the crossing. When decedent and his brother got within forty feet or fifty feet of the crossing, this brother again looked south down the track, in the direction whence the train was approaching, and saw—he says—nothing of this train. He then turned his head in the other direction, looking toward Garden City and away from the point whence the train was coming, and without again looking, con-

tinued to drive toward the track, traversing the forty feet of distance, till the car went upon the track and was struck by the train. When the brother looked last, forty feet away from the track, he was in such a position that even the weather conditions considered, he could have seen the train when it was 200 feet away. Ordinarily, he says, he could from this point have seen it when it was more than a quarter of a mile away. The automobile was then going up-grade at the rate of five or six miles an hour, and could have been brought to a stop in eight or ten feet. In other words, there was space between the time the driver last looked, and the place and moment at which he tried to cross the track and was struck, to have stopped the car four or five times. There can be no other reasonable inference than that the driver was guilty of contributory negligence, which, if he had been hurt, would have precluded his recovery. We think the physical facts to be deduced from uncontradicted evidence admit of no other inference.

Other facts in the case indicate that the engine and the car both reached this crossing at about the same instant. The front wheel on the left-hand side of the car struck the pilot of the engine. The step upon the right-hand side of this pilot was badly bent, as also were the steps leading from the ground to the cab of the locomotive on this same side. Both wheels upon the left side of the car were demolished, and there was mud upon the right-hand cylinder and the driving rod of the locomotive.

Leaving this phase of the case to be again recurred to, we are further of the view that the evidence also shows the contributory negligence of decedent himself as a matter of law. Asked touching the actions of decedent at the moment the automobile approached this crossing, decedent's brother said:

"Q. And he turned around and was looking back to the rear end of the car at the time and before this collision? That is a fact isn't it? A. At the time he was.

"Q. Was looking back at the time of this collision. he wasn't looking out in front of the car but was looking back gathering these packages that he was going to give to his children, in the back part of the car, wasn't he? A. He had just turned around.

"Q. Well it took some time to turn around didn't it, a second or so? A. Oh, it didn't take so great length of time.

"Q. Took just about as long as it would take to stop the car wouldn't it? A. About."

The above excerpt shows, we think conclusively—and there is nothing in the record to destroy or minimize its force—that decedent was not looking when he was driven into the zone of danger. He was looking to the rear instead of toward the south, or to the front, a period of time sufficient to have brought about the stopping of the car before the car went upon the track. The mathematics of the situation shows this conclusively. For if, as the only witness upon this point says, the train was running from twenty-five to thirty-five miles an hour, or if, as plaintiff's counsel assume, the train was running thirty miles an hour, and the car, as the driver thereof says, was running six miles an hour, then when the car got within ten feet of the track the train was in full view and only fifty or sixty feet away. There was then yet remaining time to stop the car, for the driver swears it could have been stopped in eight or ten feet. From the same figures, it is likewise demonstrable that when the train came into view of the deceased and his brother two hundred feet away, the car was then forty feet from the track. The space was sufficient, upon all the evidence, within which to have stopped the car four times before reaching the zone of danger. All this is true, with but slight variations, whether we take the minimum or maximum speed of the locomotive and the car, and whether we take the minimum or maximum space within which the car could have been stopped.

In such a situation, what was said by this court in the case of Kelsay v. Railroad, 129 Mo. l. c. 372, applies: ''The duty of a traveler upon a highway, in approaching a railroad crossing, to use all reasonable precautions to ascertain the approach of trains and to avoid injury by them is well settled law, not only in this court, but perhaps of all the courts of this country. This rule imperatively requires him to look carefully in both directions, at a convenient distance from the crossing, before venturing upon it, if by looking, a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see it is the duty of the traveler to look. He can not close his eyes and thereby relieve himself of the consequences of his own neglect. [Hayden v. Railroad, 124 Mo. 566.]''

But, recurring to the question in the negligence of decedent's brother who was driving, if we were to take the view that decedent was himself free from actual negligence, we are yet of the opinion that the obvious negligence of his brother who was driving is upon the facts in this record, imputable to decedent. For this brother, as stated above, admits that after looking for the train, the time of passing of which he knew, when he was forty or fifty feet from the crossing, he then looked no more, but turned his gaze toward Garden City, which was in the opposite direction from that from which the train was coming, and continued to look in this direction till the instant at which the train was actually upon him and struck the car.

In such situation, the joint enterprise and joint ownership of the automobile considered, the negligence of the driver was imputable to the deceased. It is true, that by the great preponderance of authority the negligence of the driver of an automobile is not imputable *to a mere guest, or to a*

Imputed
Negligence.

*passenger who is riding in the machine,* but who has no authority either over the machine or over the driver thereof. [Dale v. Denver Tramway Co., 97 C. C. A. 511; Baltimore v. Maryland, 92 C. C. A. 335; Lininger v. San Francisco Ry. Co., 18 Cal. App. 411; Tousley v. Pacific Ry Co., 166 Cal 457; Porter v. Jacksonville Ry., 45 Fla. 692; Ind. Traction Co. v. Love, 180 Ind. 442; Hubbard v. Bartholomew, 144 N. W. 13; Corley v. Ry. Co., 90 Kan. 70; United Railways Co. v. Crain, 123 Md. 332; Littlefield v. Gilman, 207 Mass. 539; Terwilliger v. Railroad, 209 N. Y. 522; Tonseth v. Portland Co., 141 Pac. 868; Hermann v. Rhode Island Co., 90 Atl. 813; Latimer v. Anderson County, 95 S. C. 187.]

The like rule has been applied to the negligence of the driver of an automobile for hire, in a case wherein the passenger merely gives directions as to the desired designation, but who neither has nor exercises any further control over either the machine, or the driver. [Rush v. Ry. Co., 157 Mo. App. 504; McFadden v. Lott, 161 Mo. App. 652; Thompson v. Ry., 165 Cal. 748; Roby v. K. C. Ry. Co., 130 La. 880; Meyers v. Tri-State Co., 121 Minn. 68; Wachsmith v. Railroad, 233 Pa. 465; Wilson v. Puget Sound Co., 52 Wash. 528; Galloway v. Detroit Ry. Co., 168 Mich. 343.]

But in the instant case, decedent and his brother, who was the driver of the car *of which these two and another brother were joint owners, were engaged in a joint enterprise.* They were returning to Garden City, whereat they were engaged as partners in the real estate business, from Clinton, to which place they had been on some sort of business or pleasure, the record so far as we are able to find, not disclosing which. In such case, it is almost universally held that the negligence of the driver of the car is to be imputed to the other member of the joint enterprise. [Payne v. Chicago, etc., Ry. Co., 39 Ia. 523; Nesbit v. Garner, 75 Ia., 314; Donnelly v. Brooklyn Ry. Co., 109 N. Y. 16; Schron v. Staten Island Ry. Co., 45 N. Y. Supp. 124; Boyden v.

Fitchburg Ry. Co., 72 Vt. 89; Omaha Ry. Co. v. Talbot, 48 Neb. 628.]

Here then, whether decedent and his brother were in their journey to Clinton upon either pleasure or business bent, they were neither master and servant, employee and employer, nor guest or passenger of the other. They owned the car jointly, they were upon a joint enterprise, either of business or pleasure, and neither had any more or any less control of the car at the time than the other. In such case, it seems clear that the negligence of one part owner of the car, when engaged in a joint enterprise, is imputable to the other. So, upon either view, the ruling of the learned court *nisi* in sustaining the demurrer to the evidence was well taken.

II. But it is contended that there was a duty, arising from the humanitarian doctrine, to avoid injuring decedent. This contention upon the record before us deserves but short shift. The brother of decedent says that from a point forty or fifty feet from the track is was only possible to see the train when it was two hundred feet from the crossing. The only witness offered in the case to show within what space the train in question could have been stopped, at the rate it was running, swore that it could only have been stopped in from four hundred to six hundred feet. If decedent and his brother could see the train for the first time only when it was two hundred feet from the crossing, we may safely assume that the servants, agents and employees of the defendant in charge of its train could not see the automobile at a distance, on this day, greater than two hundred feet. Therefore, if it requires a minimum of even four hundred feet within which to stop the train, no further comment is necessary. This view, of course, leaves out of consideration the testimony of other witnesses for plaintiff who swore that the train was in fact visible at a much greater distance than two

*Humanitarian Doctrine.*

hundred feet on this day. But none of these witnesses was at the point when they saw the train, that deceased and his brother occupied. Moreover, there inevitably arises in the case upon the latter view, a consideration of how far defendant was justified in concluding that decedent would stop before reaching the track, in taking the course which defendant took. The learning upon the latter point is extensive, and we need not take up space here to discuss it. Merely remarking, in passing, that if it be in fact a duty incumbent by law upon a defendant railroad to stop its trains whenever those in charge thereof see an automobile within forty or fifty feet of a railroad crossing, and running only five or six miles an hour, it would require in many cases three or four days for a train to cross this State. But upon this point, and upon the rules suggested by what we have said, we may content ourselves with saying that the record herein is replete with facts showing that this is not a last-chance-doctrine case.

It results that the view taken *nisi* was correct, and this case ought to be affirmed. Let it be so ordered. All concur.