LEE, APPELLANT, *v.* DAVIS, DIRECTOR-GENERAL OF RAILROADS, ET AL., RESPONDENTS.

(No. 5,933.)

(Submitted June 7, 1926. Decided June 22, 1926.)

[247 Pac. 1094.]

*Personal Injuries—Railroads—Crossing Accident—Contributory Negligence.*

Personal Injuries—Railroad Crossings—Contributory Negligence—Failure to Look and Discover Approach of Engine.
  1. Plaintiff, an experienced teamster and employed to superintend the hauling of mining machinery weighing four tons, was riding on the wagon with the driver, he sitting on a box toward the rear. The team traveled not to exceed one and one-half miles per hour. When a railway engine came into view the team was about sixty-six feet from the track and in a place of safety. *Held*, that plaintiff who was injured in jumping from the

---

1. See 22 R. C. L. 1049.

[76 Mont. 466.]

wagon as the collision occurred, was as guilty of contributory negligence as was the driver in failing to look and discover the approaching engine.

Same—What not Defense Against Charge of Contributory Negligence.
  2.  The contention that plaintiff was so engrossed in watching the machinery from slipping off the wagon as to excuse him from paying attention to the danger incident to a near-by railway crossing, *held* not sustained by his testimony which showed that while the team was advancing 100 or 125 feet to and upon the crossing he was engaged in looking after the contents of his lunch bucket which had overturned, such a flimsy excuse being insufficient to exonerate him from the imputation of negligence.

Same—Duty of Fellow-servant of Driver of Vehicle.
  3.  The duty of one, riding with another, in a horse-drawn vehicle or an automobile, to exercise care for his own safety is the same, be he guest or fellow-servant.

---

[1]   Railroads, 33 **Cyc.**, p. 1038, n. 4.
[2]   Railroads, 33 **Cyc.**, p. 1017, n. 73.
[3]   Railroads, 33 **Cyc.**, p. 1017, n. 72.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by Felix E. Lee against James C. Davis, Director-general of Railroads, as Agent under the Transportation Act of 1920, and others. From the judgment dismissing the complaint, plaintiff appeals. Affirmed.

*Mr. A. H. Angstman,* for Appellant, submitted a brief, and argued the cause orally.

*Messrs. Gunn, Rasch & Hall,* for Respondents, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was instituted to recover damages for personal injuries.

The Northern Pacific Railway Company which was under federal control at the time it is claimed the injuries were received, was made a party defendant originally but was dismissed before the pleadings were settled. The cause was tried upon the complaint, the joint answer of the Director-general and Magnuson, and the reply thereto. At the conclusion of

---

3.  See 2 **R. C. L.** 1207.

plaintiff's evidence the court sustained the answering defendants' motion for a nonsuit, and this appeal is from the judg-ment dismissing the complaint.

The trial court held that, as a matter of law, plaintiff was [1] guilty of negligence which contributed proximately to his injuries. From the admissions in the pleadings and from the evidence produced by the plaintiff it is made to appear: That about May 31, 1918, plaintiff, an experienced teamster, was employed by William Groseclose "to superintend the hauling" of certain mining machinery from East Helena to a point a few miles distant. Groseclose furnished a wagon, a team and a driver (H. J. Williams) for the team; the wagon was without a box, but had two timbers 6x6 on the. bolsters, with boards covering the space between these timbers. The team consisted of four heavy draft-horses, two abreast at the wheel and two abreast in the lead. On the morning of May 31 machinery weighing about four tons was loaded on the wagon at East Helena, and plaintiff and the driver, with the team and load, started for their destination. The driver sat upon the box on the front part of the load, and plaintiff occupied another box on the load but towards the rear of the wagon. About a mile and a half east of Helena, the public road upon which they were traveling extends south and crosses the main line track of the Northern Pacific Company practically at right angles. On account of the heavy load and the character of the team, they traveled slowly—not to exceed 1½ miles per hour. When they approached the crossing and when the team was 100 or 125 feet north of the track, plaintiff looked and listened for any approaching train and observed that the driver did the same thing. As they did not see or hear a train, they proceeded and when the lead horses were entirely over the track, the wheel horses about over it, and the front wheels of the wagon were on the track, a locomotive, driven by defendant Magnuson as engineer, collided with the wagon. Plaintiff jumped, cleared the track, but fell as he alighted on some rocks and sustained injury. The locomotive was backing from Winston westward to Helena and came into plain, unobstructed

view of persons in the situation of plaintiff and the driver when it was a third of a mile east of the crossing. During the time that the locomotive traveled over that intervening distance of one-third of a mile, the team advanced about 66 feet; in other words, when the locomotive came into view the team was about 66 feet north of the crossing and in a place of safety, so far as disclosed by the record. Under these circumstances no one would be heard to say that the driver was not guilty of gross negligence in proceeding on to the track. Either he did not see the approaching locomotive which was in plain view, or he attempted to beat it to the crossing, with the usual result.

It is insisted, however, that the negligence of the driver should not be imputed to the plaintiff, and whether it should or should not be done need not be determined. The question is: Was the plaintiff himself guilty of negligence which contributed proximately to his injury? The only deduction from his testimony is that he did not look for a train after the team left the point 100 or 125 feet north of the crossing, and if he had looked when the team had advanced one-half that distance, he would have seen the approaching locomotive and would have had ample time and opportunity to alight from the wagon in safety if the driver then failed or refused to stop the team.

It is urged that he was engrossed in the duties of his position [2] watching the machinery that it did not slip off the wagon, and because of this fact should be excused for not giving further attention to the danger signal—the crossing of a public road over a railroad track. He testified that when the team was 100 or 125 feet north of the crossing, he discovered that the lunch buckets had overturned and that the contents of the buckets were on the boards between the two 6x6 timbers, and that he engaged in picking up and replacing in the buckets the articles constituting the lunches. He testified: "I was down doing that; I guess the machinery did not slip very much right then, but I was busy picking the stuff up." In answer to the direct question of his own counsel, "Were you watching the

machinery at the same time?" he replied: "I was looking at all of it as near as I could. I was picking up our dinners off the bottom of the wagon and putting it in the buckets again, and when the front wheels of the wagon, it raised when it struck the plank that took it up over the rail, why something said to me, 'Look out!' I looked up and seen the engine." He testified that no one said to him "Look out," but that he just thought it. On cross-examination he testified: "Yes, I think then we were 100 or 125 feet from the track, something like that, and then I reached down to pick up the things from the bucket, and when I next looked up the lead horses were on the track and the engine almost upon us."

It is perfectly apparent from this testimony that there is not any merit in the contention that plaintiff was engrossed in looking after the machinery. During the time the team was advancing 100 or 125 feet to and upon the crossing, he was engaged in looking after the lunches. In other words, he was more concerned for the safety of the lunches than he was for the security of his life or limbs, or stated differently, he simply did not look when he came into a place of actual peril, but shifted the responsibility for his safety to the driver. This he could not do and relieve himself of the consequences of his own neglect. (*Brown* v. *McAdoo,* 195 Iowa, 286, 188 N. W. 7; *Knight* v. *Atchison, T. & S. F. Ry. Co.,* 111 Kan. 308, 206 Pac. 893; *Virginia & S. W. R. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887.) The law of contributory negligence would be meaningless if one approaching a known place of danger, and charged with the duty of making vigilant use of his natural faculties for his own safety, were permitted to excuse his negligence by saying, "My attention was irresistibly diverted by the fact that my lunch was in danger of being soiled or lost." No decided cases can be found where such a flimsy excuse was held sufficient to exonerate one from the imputation of negligence. The authorities are all to the contrary. (*Tannehill* v. *Kansas City, C. & S. Ry. Co.,* 279 Mo. 158, 213 S. W. 818; *Kanass* v. *Chicago, M. & St. P. Ry. Co.,* 180 Wis. 49, 192 N. W. 383; *Southern Ry. Co.* v. *Priester* (C. C. A.), 289 Fed. 945.)

In its facts and the principles of law involved, this case cannot be distinguished from *Sherris* v. *Northern Pac. Ry. Co.*, 55 Mont. 189, 175 Pac. 269, and the decision in that case is conclusive of this one.

Counsel for plaintiff direct attention to the fact that in the **[3]** *Sherris Case* the plaintiff was a guest of the driver, that the conveyance used in that case was an automobile, and that Sherris was occupying a seat beside the driver at the time the collision occurred. The fact that Sherris was a guest of the driver and not a fellow-servant, as in this instance, did not enter into the decision in that case and could not have done so. The fact that the conveyance is an automobile or a horse-drawn vehicle does not reflect in any degree upon the question of the duty of one riding in the vehicle to exercise reasonable care for his own safety. Doubtless an automobile may be stopped with safety nearer to a moving train·than would be prudent with a team of horses; but within a zone of reasonable safety for either character of conveyance the rule of law applicable is the same. It is true that in this instance plaintiff was not sitting beside the driver, but there is not any particular virtue which attaches to the driver's seat. Plaintiff did occupy a seat just as advantageous as the driver's seat for the purpose of observing the approaching locomotive.

The trial court did not err in its ruling, and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.