JOHN PINKLEY, ADMINISTRATOR OF THE ESTATE OF ANDREW PINKLEY, DECEASED, RESPONDENT, v. MISSOURI-ILLINOIS RAILROAD COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed July 19, 1927.

168

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 762, n. 32; Railroads, 33Cyc, p. 978, n. 68; p. 979, n. 74; p. 980, n. 79; p. 1049, n. 49; p. 1061, n. 44; p. 1129, n. 68.

*C. J. Stanton, Parkhurst Sleeth* and *Chas. Richeson* for appellant.

*O. Lee Munger* and *Hay & Flanagan* for respondent.

NIPPER, J.—This is an action for damages brought by the administrator of the estate of Andrew Pinkley, to recover for the death of said Pinkley, when he was struck by one of defendant's trains at a railroad crossing in the town of Flat River, Missouri.

There were several assignments of negligence in the petition, but plaintiff requested and was given an instruction only on the humanitarian doctrine, thereby, abandoning all other assignment of negligence set out in the petition. The case, therefore, went to the jury upon the question of whether or not the defendant knew, or by the exercise of ordinary care could have known, that deceased was on and approaching the railroad track, in a position of peril, and oblivious thereto, in time thereafter, by the exercise of ordinary care, and with the means and appliances at hand, with safety to persons on said train, to have stopped the same, or to have reduced the speed thereof, or to have given a warning signal to deceased, in time to have averted the injury.

The defendant requested instructions in the nature of demurrers to the evidence, at the close of plaintiff's case, and again at the close of the whole case. Plaintiff recovered judgment for $5500, and defendant appeals.

The principal error assigned here is upon the failure of the court to give these instructions in the nature of demurrers, and it is to this question we will first address ourselves after stating the facts as they appear most favorable to plaintiff.

The accident occurred about three o'clock in the afternoon of a "bright, sunshiny day," at a railroad crossing, as a train consisting of an engine and four cars was backing across the crossing. At the point where deceased met his death, the railroad runs practically north and south, and the dirt or public road, crosses the railroad at

right angles, running east and west. Deceased was approaching the railroad crossing from the west, and from about sixty-five feet west of the crossing, up to the railroad tracks, it is uphill, the grade being about ten per cent. The road continues on past the crossing, uphill for a considerable distance east of the track as well. The train was backing toward the crossing at the rate of about six miles per hour, and could have been stopped within a space of six or eight feet, giving to the evidence the most favorable view for the plaintiff. There was a brakeman on the rear car as it backed toward the crossing, and the conductor was on or near the crossing for the purpose of warning the traveling public at the time. The conductor was upon the crossing not only to warn the traveling public, but if necessary, to signal the engineer to stop. The conductor could see the deceased approaching the railroad crossing for several hundred feet, and the deceased, as well, had a clear view of all the surroundings at the time. The brakeman upon the train, as well as persons approaching from the east, did see the deceased approaching when he was forty feet away. This brakeman was on the cars for the purpose of giving signals to the engineer. When this train was backing toward the crossing, and some twenty or thirty feet away, according to one of plaintiff's witnesses, the deceased was approaching the crossing from the west, uphill and at a speed of from ten to fifteen miles per hour. Deceased was driving a Ford touring car, and there was no one in the car with him, no side curtains, or anything to obstruct his view at any time after he came to the foot of the hill some sixty feet away. Some of the witnesses said that deceased's car was traveling at a rate of speed of about six or eight miles an hour. When he was at a point of something like thirty feet from the crossing, he was looking in the direction opposite from which the train was coming, or looking to the south, toward some stationary cars on the track. Some of the witnesses testified that they didn't see him look toward the crossing, while many witnesses testified that he was looking straight ahead all the time until he was struck. The evidence discloses that the conductor standing at the crossing, was waiving and signaling toward deceased all the time to stop his automobile, but that he continued on to the tracks and was struck by the backing train and killed. Plaintiff's evidence discloses that when deceased came up to within a few feet of the flagman, the flagman or conductor, who was standing on the track, then turned and gave signals to the train crew to stop the train, which was done within about eight feet after it struck deceased's car.

It appears, that as deceased approached this crossing from the west, there were two occupants of another car approaching this crossing from the east. They stopped their car close to the tracks

and saw the accident happen. These were the only two witnesses introduced by plaintiff.

One of these witnesses testified, when asked to describe in his own language what occurred at the time, that he saw Pinkley coming up the hill at a speed of from ten to fifteen miles per hour, thirty or forty feet from the track; that he was looking toward the cars stationed on the track south of the crossing. The train was slowly backing down from the north, about thirty feet away; that he saw the man motioning Pinkley to stop, "and he was down within a few feet of him, and then he swung himself around toward the engineer and signaled the engineer to stop. When the signal was given to the engineer to stop, the car was on the crossing." He said the engineer could not possibly have seen Pinkley from where he was. He also stated that the brakeman on the car was signaling.

The other occupant of the car on the east side of the crossing testified that he saw Pinkley sixty-five feet from the crossing, coming uphill at a rate of speed of about ten or twenty miles per hour, and that the only time he noticed him he was looking toward the south, or away from the direction where the train was backing; that when he first noticed the railroad cars they were about thirty or forty feet away from the crossing; that the cars were backing toward the crossing very slowly and carefully; that he didn't notice any checking in the speed of the railroad cars until deceased was struck. There was evidence to the effect that prior to the time deceased entered upon the crossing, and while he was thirty or forty feet away from the tracks, he spoke to a lady whom he recognized, and waived at her, then continued to look in that direction until he had gone upon the tracks. The operatives of the train all testified that the whistle was blown and the bell rang before the train entered upon the crossing. However, we shall disregard this testimony and consider only the testimony most favorable to plaintiff and give him the benefit of all reasonable inferences which may be drawn therefrom.

In considering the question of whether or not there was a case made for the jury, we are inclined to the view, after careful consideration, that although this accident resulted in the death of the occupant of the automobile, there was no case made for the jury under the last chance doctrine, and the court erred in not giving the withdrawal instructions in the nature of demurrers to the evidence, as requested by defendant. The count in the petition alleging liability under the humanitarian doctrine, states that defendant's agents and servants not only failed to stop the train or to slacken its speed, but failed to give any warning signal. Therefore, plaintiff would be entitled to invoke the element of failure to warn under the last-chance doctrine as a part of his case. [Conley v. Missouri Pac. R. Co. (Mo. App.), 253 S. W. 424, and cases cited.]

When deceased came into a position of peril the agents and servants of defendant owed him the duty to exercise ordinary care to stop the train. If this could not be done, then to slacken the speed, and if this could not save him, then under the pleadings in this case, they owed him the duty to warn, if warning would have averted the injury. In fact under the circumstances of this particular case, the duty to warn was first, and the question which arises is at what time was it apparent to the operatives of the train, or at what time should it have been apparent to them, that the warning signals given by the conductor was not going to be sufficient to prevent the deceased from entering upon the tracks. Certainly, under the facts of this case, defendant's conductor who was acting as flagman at the time, and stationed upon this crossing for the purpose both of warning the public of the danger of the approaching train, as well as warning the other opperatives of the train when to stop the same, would have a right to assume that a person *sui juris* approaching a railroad crossing in a ford touring car, going uphill, at the rate of speed at which the deceased was traveling, in broad daylight, with a moving train in plain view, would stop before entering upon the tracks, when such conductor was signaling and motioning all the time to the occupant of the car not to enter upon the crossing. The evidence discloses that as soon as the conductor saw that deceased was not going to stop, he jumped out of the way of the automobile, or just immediately prior thereto, swung himself around and signaled to the operatives of the train to stop the same. What more could an ordinary prudent man do in the exercise of ordinary care, to have prevented the injury, than was done under the circumstances? Plaintiff cites us to a number of cases where the railroad was held liable for failure to stop the train or slacken the speed, or give some signal of warning, when it should have been apparent to such operatives of the train that the deceased or injured parties were in a position of peril, and oblivious thereto. But in none of them are the facts as they are here. In none of those cases have we a situation where the operatives of the train concededly gave warning as in this case. The conductor, who was standing directly in front of the deceased, waving and signaling to him to stop, was giving him all the notice that ordinary prudence would require under such circumstances, because the evidence discloses that the operator of the automobile could have stopped the same, going uphill, in a very few feet. To hold otherwise, would place upon those operating railroad trains the duty to stop at every public crossing and not start again until it was apparent to them that no one driving an automobile would be likely to enter upon the crossing. This would make defendant an insurer, and prevent the successful operation of railroad trains. Even though it was apparent that deceased may have been oblivious when he was thirty feet away from the track, yet he was going uphill, and at a speed of not more than

fifteen miles per hour, and the agents and servants of defendant would have a right to assume under such circumstances, that he would not continue on upon and across the track without ever looking, when he was well acquainted with the location, and well acquainted with the surroundings, having lived in that community for some time. We are cited to such cases as: Chapman v. Missouri Pac. R. Co., 217 Mo. App. 312, 269 S. W. 688; Logan v. Chicago B. & Q. R. Co., 300 Mo. 611, 254 S. W. 705, and Smith v. Chicago Great W. R. Co. (Mo. App.), 282 S. W. 62, as supporting the contention that defendant's agents and servants had no right to assume that deceased would stop before entering upon the railroad tracks, when he was thirty or forty feet away.

These cases, however, are not authority for plaintiff's contention. In those cases there was no such a situation as we have here, where the operatives of the train, or some of them, are standing on the railroad crossing directly in front of the approaching automobile, and signaling in every way possible for the operator of the automobile to stop his car before entering upon the crossing. Under such a state facts as we have here, defendant would owe no greater duty, until it became apparent that the deceased was going to continue in spite of his warning. There is nothing in this record to show that this fact was apparent to the operatives of the train in time for them to have averted the accident, even though the train was traveling at a slow rate of speed. [Boyd v. Wabash West. R. Co., 105 Mo. 371, 16 S. W. 909; State ex rel., St. Louis, S. F. R. Co. v. Reynolds, 289 Mo. 479, 233 S. W. 219; Keele v. Atchison, T. & S. F. R. Co., 258 Mo. 62, 167 S. W. 493; Tannehill v. Kansas City C. & S. R. Co., 279 Mo. 158, 213 S. W. 818.]

It follows therefore, that the judgment of the trial court should be and is reversed. *Daues, P. J.,* and *Becker, J.,* concur.