**Stacie MITCHEM, Plaintiff–Respondent,**

v.

**James R. GABBERT and Matt Helm d/b/a G & H Lawn Maintenance and G & H Lawn Maintenance Company, Defendants–Appellants,**

**and**

**Crystal R. Tryon, Defendant–Respondent.**

**Nos. 23305, 23410.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 21, 2000.

Paul F. Sherman, Daniel, Clampett, Powell & Cunningham, L.L.C., Springfield, for appellants.

Arthur E. Curtis, Ben K. Upp, Greene & Curtis, L.L.P., Springfield, for respondent Stacie Mitchem.

JOHN E. PARRISH, Presiding Judge.

James R. Gabbert and Matt Helm were partners in a lawn maintenance business. They and Crystal Tryon were defendants in a negligence action brought by Stacie Mitchem (plaintiff). Judgment was entered for plaintiff following a jury trial. Plaintiff was awarded damages in the amount of $1,000,000. Five percent of fault was assessed to defendants Gabbert and Helm. Ninety-five percent was assessed to defendant Tryon. Defendants Gabbert and Helm appeal.[1]

Defendants Gabbert and Helm filed two notices of appeal. One was directed to a document filed October 29, 1999, denominated "Amended Judgment." That document did not adjudicate a cross-claim of defendant Tryon against defendants Gabbert and Helm. On December 28, 1999, the trial court filed a further document denominated "Amended Judgment" declaring there was no just reason for delay in the entry of judgment as permitted by Rule 74.01(b). Defendants Gabbert and Helm filed a second notice of appeal directed to that amended judgment.

■ This court ordered the two appeals consolidated, No. 23305 being the appeal directed to the October 29 judgment and No. 23410 being the appeal directed to the December 28 judgment. This court finds that the judgment in No. 23305 was not a final judgment. It did not dispose of all claims for relief that were pending in the case before the trial court nor did it establish, as permitted by Rule 74.01(b), that there was no just reason for delay in the entry of judgment. That appeal is dismissed. *See Bellon Wrecking & Salvage Co., Inc. v. Dave Orf, Inc.*, 956 S.W.2d 437, 438 (Mo.App.1997).

On August 5, 1997, plaintiff, Corine Thurman and defendant Tryon were passengers in Ms. Tryon's automobile. Ms. Tryon was driving. They were traveling from Springfield en route to Bolivar. Ms. Thurman explained that she, plaintiff and Ms. Tryon worked together at a restaurant; that Ms. Tryon planned to go to

---

1. The judgment declares the five percent of fault assessed against defendants Gabbert and Helm is assessed against them "as partners in G & H Lawn Maintenance and G & H Lawn Maintenance Company."

Bolivar the afternoon of August 5 "to have her nails done." Ms. Tryon asked the other two if they would like to go with her. She was asked if there was a particular reason that she and plaintiff went with Ms. Tryon. Ms. Thurman said they were all friends; that they were "going to have a girl's day that day."

Ms. Tryon's vehicle approached Slagle, Missouri, on Missouri Route 13. Route 13 is a divided highway at that location. Ms. Tryon's vehicle was northbound in the right-hand lane. A pickup truck was in front of the Tryon vehicle, also in the right-hand lane. The pickup was towing a trailer carrying lawn mowers and other equipment. Defendant Gabbert was driving the pickup. Defendant Helm was a passenger.

The pickup was traveling at a slower speed than Ms. Tryon's vehicle. She pulled her vehicle into the left-hand lane to pass. As Ms. Tryon's vehicle came alongside the pickup, the pickup moved to the left toward her lane. Ms. Tryon believed the pickup and trailer were "blocking the entire lane." She testified at trial, "I started to apply my brakes, and then I noticed that I wasn't going to be able to stop, so I left the road and went over into the Pitts Mobile Home parking lot."

Ms. Tryon's vehicle slid through a gravel parking lot and grass, spun around facing south, crossed back over the northbound lanes of Highway 13 and rolled over. Plaintiff was injured.

The first allegation of trial court error by defendants Gabbert and Helm, their Point I, asserts the trial court erred in refusing certain jury instructions they tendered during the instruction conference. The proposed instructions were marked Nos. A, B and C and filed in the trial court records. Instruction No. A was patterned after MAI 2.05 for purposes of submitting a packet that would permit the jury to find that plaintiff and defendant Tryon were "acting in the operation of [Ms. Tryon's] vehicle as part of a joint enterprise" at the time of the accident. Instruction No. B

was a proposed verdict director, designated "M.A.I. 37.05(1) modified" and "18.01 modified," for finding a joint enterprise and imposing any percentage of fault assessed to defendant Tryon to plaintiff. Instruction No. C was a verdict form for use by the jury in declaring whether plaintiff would be "responsible for any negligence of defendant Tryon." Instruction No. C was designated "M.A.I. 18.01 (Modified); 36.17(A)."

Although copies of the refused instructions are included in the legal file component of the record on appeal, they are not set forth in Gabbert's and Helm's appellate brief. Rule 84.04(e) requires that when a point relates to refusal of an instruction, "such instruction shall be set forth in full in the argument portion of the brief." "Rule 84.04 is to be strictly enforced." *McMullin v. Borgers,* 806 S.W.2d 724, 727 (Mo.App.1991). An appellant who asserts instructional error but does not set forth the instruction in question in the argument portion of his or her brief, fails to preserve the issue for appeal. *Ellis v. Jurea Apartments, Inc.,* 875 S.W.2d 203, 205 (Mo.App.1994); *McMullin, supra,* at 727–28. An appellate court may, however, review the claim for plain error. Rule 84.13(c). "Plain error occurs only when the reviewing court deems manifest injustice or miscarriage of justice occurred." *St. Francis Medical Center v. Hargrove,* 956 S.W.2d 949, 952 (Mo.App.1997).

The essential elements of a joint enterprise are (1) an agreement, express or implied, among the members of the group, (2) a common purpose to be carried out by the group, (3) a community of interests, among the group, in that purpose, and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *McSorley v. Hauck,* 883 S.W.2d 562, 566 (Mo.App. 1994). In refusing to instruct on joint enterprise, the trial court found there was no evidence of an equal right of control of

the vehicle by its occupants. This court agrees.

■ As a general rule, the negligence of a driver of an automobile will not be imputed to a mere guest or passenger who has no control or authority over the automobile or over the driver. *Tannehill v. Kansas City, C. & S. Ry. Co.*, 279 Mo. 158, 213 S.W. 818, 822 (1919); *Counts v. Thomas*, 63 S.W.2d 416, 419 (Mo.App.1933). In order for a passenger to be found to be engaged in a joint enterprise involving use of an automobile, the passenger must be found to have an equal right to be heard in the manner in which it is driven. *Manley v. Horton*, 414 S.W.2d 254, 260 (Mo.1967), *citing* Prosser on Torts 2nd Ed., § 65.

Defendants Gabbert and Helm rely on testimony of plaintiff and defendant Tryon in asserting that plaintiff had an equal right of control with Ms. Tryon and that a joint enterprise existed with respect to the intended journey from Springfield to Bolivar. Plaintiff was asked if she had ridden with Ms. Tryon before the day of the accident. She replied that she had. Plaintiff was asked if Ms. Tryon was "the kind of person that if you had told her to slow down, if you felt like she was going too fast, would she have slowed down?" Plaintiff answered, "Yes, sir."

Ms. Tryon was asked, "If [plaintiff] had asked you to slow down that day, would you have?" She answered, "Of course."

The responses of plaintiff and defendant Tryon to the questions asked do not, as a matter of law, show a joint right of control. Unlike the facts in cases in which Missouri courts have found a joint enterprise among automobile travelers, plaintiff and Ms. Tryon were not shown to have an agreement between themselves or with Ms.

Thurman to share expenses of the trip to Bolivar or driving responsibilities. There was no evidence that Ms. Tryon's passengers had any voice in the route that was to be traveled. The trip was of relatively short distance, unlike the interstate travel that was involved in *Manley v. Horton, supra,*[2] and *Matta v. Welcher*, 387 S.W.2d 265 (Mo.App.1965),[3] where it was held there was sufficient evidence to establish a joint enterprise between a driver of an automobile and its passengers. In *Manley* and *Welcher*, unlike this case, there were agreements between occupants of a vehicle owned by one of the travelers to share driving responsibilities and expenses of the trips.

This court finds no manifest injustice or miscarriage of justice in the trial court's refusal to submit Instruction Nos. A, B and C tendered by defendants Gabbert and Helm. Point I is denied.

Point II is directed to the admission in evidence of Plaintiff's Exhibits Nos. 42, 43, 44, 45 and 46, collectively referred to as the "Life Care Plan." Point II asserts the trial court erred in admitting these exhibits in evidence and in admitting testimony of Dr. Terry Winkler about the plan. Defendants Gabbert and Helm argue "the plan contained numerous items which were not shown to be future consequences of plaintiff's injury which were reasonably certain to occur...."

The objections defendants Gabbert and Helm made at trial when the exhibits about which they now complain (Plaintiff's Exhibit Nos. 42, 43, 44 and 45) were offered in evidence were, "Same objection as previously noted with the Court," and "I'll object ... for the previous reasons noted with the Court."[4] Prior to Dr. Winkler

---

2. Two of the defendants in *Manley* were on military leave and were traveling from Oklahoma to their homes in Detroit, Michigan, in an automobile owned by one of them.

3. Five members of the air force were en route to a bowling tournament traveling from Shreveport, Louisiana, to Des Moines, Iowa.

The automobile in which they traveled belonged to one of the airmen.

4. Although Point II is also directed to Plaintiff's Exhibit No. 46, this court's review of the record on appeal does not reveal that Plaintiff's Exhibit No. 46 was admitted in evidence. Further, the exhibits about which Point II

testifying, the attorney for defendants Gabbert and Helm told the court he wanted to renew his motion in limine. He stated he had previously pointed out to the trial court that "there's considerable problems with regard to [Dr. Winkler's] preparation of his Life Care Plan for [plaintiff]." He observed that the life care plan was "not in present value terms." He argued in support of his "renewal" of the motion in limine that the life care plan "call[ed] for the jury to speculate"; that Dr. Winkler was not qualified as an economist.

 Arguably, the claim of error in Point II was not preserved for appeal. In order to preserve allegations of error in the admission of evidence, the complaining party must object to the evidence when it was tendered at trial. Rule 78.09. In a jury case, the matter must be included in a timely-filed motion for a new trial. Rule 78.07(a).

The motion in limine of defendants Gabbert and Helm includes a numbered paragraph subtitled "Dr. Winkler's Life Care Plan for Plaintiff." It consists of 70 typewritten lines that cover more than three pages. Albeit anything but concise, the motion does complain about items of minimal cost included in Dr. Winkler's assessment of plaintiff's future medical needs with respect to "Durable Medical Items," e.g., the motion complains that the plan includes a cane, a " 'lift chair recliner' or a multitude of other items."

 Assuming arguendo that the issue in Point II was preserved for this court's review, the claim has no merit. Dr. Winkler is a medical doctor. He examined plaintiff and interviewed her concerning her injuries. He is board certified in physical medicine and rehabilitation and sub-board certified in spinal cord injury medicine. He testified he is a wound care specialist; that he is certified by the Commission on Disability Evaluations as a Life Care Planner. Dr. Winkler testified that the items contained in the life care plan he prepared for plaintiff were based upon a reasonable degree of medical certainty.

The authority on which defendants Gabbert and Helm rely in support of Point II are *Hobbs v. Harken,* 969 S.W.2d 318 (Mo. App.1998), and *First Nat'l Bank of Fort Smith v. Kansas City Southern Ry. Co.,* 865 S.W.2d 719 (Mo.App.1993). Those cases, unlike the one that is the subject of this appeal, lacked testimony by a physician or other medical expert that the medical evidence adduced was to a reasonable degree of medical certainty. See § 490.065, RSMo 1994. *See also Carter v. Jones Truck Lines, Inc.,* 943 S.W.2d 821, 826 (Mo.App.1997); *Pfeffer v. Kerr,* 693 S.W.2d 296, 300 (Mo.App.1985). Point II is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.

---

complains have not been filed with this court although plaintiff's brief contains an appendix that purports to include copies of Plaintiff's Exhibit Nos. 42, 43, 44 and 45.